[Civil No. 3039. Filed February 16, 1932.]

[8 Pac. (2d) 256.]

WIN WYLIE, Appellant, v. THE DOUGLAS LUMBER COMPANY, a Corporation, SOUTH SIDE GAS AND ELECTRIC COMPANY, a Corporation, HARRY S. HANNA, Sole Trader Doing Business as HANNA PAINT COMPANY, CHARLES THOMPSON, ANCHOR MANUFACTURING COMPANY, a Corporation, JEAN R. WALKER, ALLISON STEEL MANUFACTURING COMPANY, a Corporation, SCHMIDT-HITCHCOCK, CONTRACTORS, a Corporation, G. C. PARKER, G. C. PARKER and PHIL WOODRING, Copartners Doing Business as RITE WAY PLUMBING COMPANY, ARIZONA SASH–DOOR AND GLASS COMPANY, a Corporation, · ARIZONA CONCRETE COMPANY, a Corporation, GUARANTY BUILDING AND FINANCE COMPANY, a Corporation, CEMENT PRODUCTS COMPANY, INC., OF PHOENIX, ARIZONA, a Corporation, NAT DRYDEN MAY and CALANTHA MAY, His Wife, GEORGE ALLSUP and TED ROSE, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. H. M. Van Denburgh and Mr. Stephen B. Rayburn, for Appellee The Douglas Lumber Company.

ROSS, J.—Twelve claimants of mechanics' liens against lots 21 and 22, Belleview place, Phoenix, as plaintiffs or defendants or cross-complainants, are joined in this action brought to establish and foreclose their liens. They have made Nat Dryden May and Calantha May, husband and wife, owners of said lots, the contractor, Guaranty Building & Finance Company, and Win Wylie, the assignee of a mortgage on the property, parties defendant. Wylie's answer presents the issue of priority only. He claims that his mortgage attached to the property before the liens. The court found the issue in favor of the lienors, and entered judgment accordingly. Wylie has appealed, asserting that under the facts and the

law his mortgage should have preference. The question must be determined upon the following facts:

On or about January 4, 1929, the Mays entered into a contract with the Guaranty Building & Finance Company under the terms of which the latter agreed to construct upon said lots 21 and 22 a series of dwellings, garages, and a storeroom, and to furnish all the labor and materials therefor, for the sum of $14,200, to be paid by the Mays as follows: $3,500 cash and their promissory note for $10,700, payable in three years from its date, secured by mortgage on the premises. On the fourth day of January, 1929, the full contract price was paid by the Mays by turning over to the contractor $3,500 in cash or its equivalent in commercial paper, and their note and mortgage for $10,700 as agreed. This mortgage was filed and recorded on January 7th. On January 30th the payee-contractor assigned it to one George Allsup, and on the same day George Allsup indorsed the note, and assigned the mortgage to defendant Win Wylie as collateral security to the contractor's 90-day note for $5,250, made payable to said Allsup. These assignments were filed and recorded at the same time on January 31st.

The contractor's note for $5,250 was not paid when due, and, in June, Wylie through legal proceedings sold the collateral, and at the sale became the purchaser thereof.

Wylie knew when he accepted the note and mortgage as collateral that they were given to the contractor as part payment for the dwellings, garages and storeroom the contractor was building for the Mays, and understood or believed that the money he advanced on the Allsup transaction was to be used in such construction. Wylie loaned on the Allsup note only $5,000.

The contractor commenced the performance of the contract on January 5th by starting a force of men to excavating for foundations.

The earliest lien claimant began delivering on the premises to the contractor materials and to do work thereon a few days subsequent to the seventh day of January, the date the mortgage was filed for record, and he and others continued to deliver materials thereon as ordered by the contractor, Guaranty Building & Finance Company, until on or about April 20th, when such contractor abandoned the construction; and thereafter the owners completed the construction as per the terms of the contract.

The question of priority of mechanics' and materialmen's liens over other kinds of liens and encumbrances, including mortgages, has not heretofore been before this court. We find upon investigation that under the laws of most of the states these persons are preferred to other lien claimants. The general aspects of these laws are very similar, but in their details they are enough different to make their construction of doubtful assistance in construing our own statute. We are, however, convinced that our legislature intended that laborers and materialmen, who contribute of their labor and means to enhance the value of the property of another, should be jealously protected. Article 2, chap. 46, Rev. Code 1928, §§ 2020–2037. Thereunder the contractor, for the purposes of employing labor and purchasing materials to carry out the building contract, is made the agent of the owner, and the liability of the owner therefor is not limited except to "the reasonable value of labor or materials furnished to his agent." Section 2020. The only one limited as to amount is the contractor. He, of course, may not have a lien for any excess over the contract price. These favored creditors of a defaulting contractor, or of a defaulting owner who is himself making the improvement, are

preferred only when their right to a lien attaches first, or without notice, actual or constructive, of mortgage or other lien.

When a claim and notice of lien is made out and filed according to the statute, it relates back to some act of the contractor or to some act of the lienor himself—to which one of these is the crucial point here. In other words, does the lien claimant's right to a lien under the facts of this case date from the time the contractor commenced the labor on the property, or from the time each one of the lien claimants commenced to furnish material or labor to the contractor? If the former is the correct date, then the liens here attached first; but, if the latter is the correct date, the mortgage first attached to the property, and should have preference. The present section of our statute fixing preference is 2032, Revised Code of 1928, reading as follows:

"2032. *Preference over Subsequent Encumbrances.* The liens provided for in this article, unless otherwise herein provided, are preferred to all liens, mortgages or other encumbrances which have attached upon the property, subsequent to the time when the labor was commenced or the materials commenced to be furnished, also, to all liens, mortgages and other encumbrances of which the lienholder had no notice, actual or constructive, at the time he commenced the labor or commenced to furnish the materials.''

This first found a place in our laws as section 2908, Revised Statutes of 1901. It was amended by section 20, Act No. 90, Laws of 1903, and as amended was carried forward as paragraph 3658 of the Revised Code of 1913. In its present form it is to all intents and purposes the same as it was after the amendment of 1903 and as in the 1913 Code. While it is not *verbatim* the statute of California (section 1186, Kerr's Code Civ. Proc. 1920), we take it

that it was probably borrowed from California and has the same meaning. The latter statute reads as follows:

"1186. *Effect of Liens.* The liens provided for in this chapter are preferred to any lien, mortgage, or other encumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also, to any lien, mortgage, or other encumbrance of which the lienholder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or the materials were commenced to be furnished."

Because of the close similarity of these statutes, we feel the construction placed thereon by the California courts should be very persuasive, if not controlling. If the laborer or materialman performs labor or furnishes material to the contractor under the contract, the courts of California hold his right to a lien attaches "at the time when the labor was commenced" by the contractor; but, if the laborer or materialman furnishes labor or material under a void contract between the owner and contractor, or furnishes labor or material to the owner-contractor directly, then the lien dates from the time he commences to labor or to furnish material. As will be seen from the quotation below, this rule was first announced in a case wherein the contract between the owner and the contractor was held to be void because of the failure to record it as the law provided. But that does not affect the logic or soundness of the construction. The very recent case of *American Building Material Service Co.* v. *Wallin,* 116 Cal. App. 527, 2 Pac. (2d) 1007, approves the rule stated, and quotes the reasoning of a former case as follows:

"In *Simons Brick Co.* v. *Hetzel,* 72 Cal. App. 1, 236 Pac. 357, 359, in discussing the holding in *McClain*

v. *Hutton* [131 Cal. 132, 61 Pac. 273, 63 Pac. 182, 622], *supra* [the court] said: 'As we understand this decision, the court held that where there was a valid contract, liens thereunder related back to the commencement of the building, but where the contract was invalid the liens related back only to the respective dates when the work was performed and the materials were commenced to be furnished. The reason of the rule thus enunciated we think is apparent. Under section 1183, as it stood at the time *McClain* v. *Hutton* was decided, the failure to record the contract rendered it "wholly void, and no recovery could be had thereon by either party thereto; and in such case, labor done and materials furnished by all persons . . . except the contractor, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof." But, where the contract was duly filed for record, all liens against the building were based primarily upon the contract, and the labor and material covered by the liens were deemed to have been performed and furnished under said contract. The section therefore divided liens into two classes, those arising under a valid contract between the owner and the contractor, and those where the labor done and materials furnished were deemed to have been done and furnished at the personal instance of the owner. This latter class included all liens of subcontractors, materialmen, and laborers, when there was no valid contract of record, and each of these persons by section 1183 was given a lien by virtue of an implied contract between him and the owner. As far as his right to a lien was concerned, he occupied the same relative position to the owner as if the latter had not made any general contract whatever, but had personally and directly bought the materials and employed the labor used in the construction of the building. In such a case, each laborer and materialman would depend for his lien upon his individual agreement with the owner, and his right to a lien would only commence when he began labor upon, or commenced to furnish material for, the building.' "

See, also *Bank of Italy* v. *MacGill,* 93 Cal. App. 228, 269 Pac. 566.

The rule as to when the lien attaches when there is no general contract is again stated in *Consolidated Lumber Co.* v. *Bastien,* 118 Cal. App. 267, 5 Pac. (2d) 80.

We cannot say, as we should like to, that the language of section 2032 is plain and unambiguous. If the first sentence thereof stood alone, we could say that, because such language, or equivalent language, is found in many of the lien statutes and has been construed. "The time when the labor was commenced" on the property, or "the materials commenced to be furnished" for the improvement are clearly expressions referable to services under the contract between the owner and contractor. Labor and material furnished the contractor secure lien rights from the time the building is commenced or the material is commenced to be furnished under the general contract. It is said in 40 Corpus Juris, 266, section 329:

"In a number of jurisdictions, the lien relates back to, and attaches as of the date of, the commencement of the building or improvement, regardless of the time when the particular work or material on account of which the lien is claimed was actually done or furnished."

It is the second sentence, beginning with the word "also," that introduces doubt or confusion into the meaning of said section 2032. If, however, it be taken into consideration that the mechanic's and materialman's lien law contemplates that the right to a lien may originate either through a contractor representing the owner, or through the owner acting as his own builder or contractor, section 2020, and that the second sentence is intended to take care of those persons furnishing labor or material directly

to the owner, then any doubt or confusion is removed and the meaning becomes clear.

It may be said that such construction of section 2032 defeats the intent and purpose of section 2036. The latter section provides that all labor and material, without reference to the time when furnished or date of filing notice and claim of lien, shall be on an equal footing, and, if upon a sale of property enough is not realized to pay all lien claimants in full, they shall prorate. On the contrary, the construction we have given section 2032 will preserve and effectuate, in a large measure, the meaning of section 2036, especially when the building, structure or improvement has been made under a general contract. In such case their liens are upon an equal footing, regardless of the date of filing lien or the date of performing work or furnishing material. The one who furnishes the last item of material or does the last work on the building, structure or improvement is in just as good shape as the one who did the first work or furnished the first material. Their right of lien relates to the same date. No lien, mortgage or other encumbrance can intervene between the liens when the claimants' rights relate to and originate in a contract between the owner and contractor.

If, however, the labor is performed or the material furnished directly to and upon the credit of the owner, mortgage liens and other encumbrances may attach to the property between the dates that their rights to their liens accrue, and thereby defeat the equality provided for in section 2036. This loss of equality, however, is in a measure compensated by the personal liability of the owner for the labor and materials, which does not exist when the labor or material is furnished the contractor.

The purpose and object of section 2036 is to define and fix the respective rights of lienors *inter sese* and not as between them and a mortgagee whose lien

is prior. Where a mortgage or other encumbrance intervenes between lien claimants, the rule of adjustment is stated to be:

"Although as between themselves several mechanics' liens may be entitled to stand on an equality, this may be prevented by the existence of an encumbrance which, while inferior to some of the liens, is superior to others; in such case the fund is to be applied first to the payment of the liens superior to the intervening encumbrance, in full or *pro rata* as the case may be, next to the encumbrance, and lastly to the liens inferior to the encumbrance, *pro rata.*" 40 C. J. 284, § 357.

Under the facts of this case and the law as we interpret it, the equality provided for in section 2036 is not disturbed, it appearing that all of the lien claimants have become such through the general contractor. What the rule should be when the lienors have directly contracted with the owner and rendered services to him personally it will be time enough to decide when the facts present the question.

It seems to us that the mortgage here has no standing as against the lien claimants for another reason. There is no law against the owner paying the contractor in full in advance and trusting to the latter's honesty and ability to take care of the claims of mechanics and materialmen. If he wants to take the chance, he may pay the full consideration in cash, or he may do so with his negotiable promissory note secured with the property; and, as between him and the contractor, in the absence of fraud or mistake, the contract would be upheld. But the fact that the contractor has been paid in full would not exempt the owner's property from liens of mechanics and materialmen. The property in its improved condition, at least so far as the contractor is concerned, is a fund set aside for the payment of such lien creditors. Any sale or transfer or disposition

by the contractor of his interest in the contract would be subject to the prior rights of mechanics and materialmen. If he or his assignee should file notice and claim of lien on the property, it would be secondary to the lien of such creditors. Therefore, if he takes a mortgage on the property for all, or a portion of, the contract price of the buildings and improvements, such mortgage is subject to the claims of persons who have worked on or furnished material for the property, even though it was of record or was known to exist by such persons when they commenced to work or furnish materials. The purchaser of such a mortgage with notice is in no better position than the mortgagee-contractor. He only steps into the latter's shoes. As against lienors for material and labor, the mortgage has no validity. Wylie, when taking the note and mortgage as collateral, and later when he acquired title to them, knew what they were given for, that they were part of the consideration the contractor was receiving for the construction of the dwellings, garages and storeroom.

In *Fickling* v. *Jackman*, (Cal. App.) 259 Pac. 84, the question of the right of the contractor to prefer himself over lienors for labor and material, by taking a mortgage on property for a part of the consideration of his contract, was involved, and the court reached the same conclusion we have. It was there said:

"To give the lien of the trust deed preference over the mechanics' liens would amount to preferring the contractor to the laborers and materialmen, contrary to the plain intent of section 1193 of the Code of Civil Procedure [our sections 2024, 2025]. By this section the Legislature has declared that the claims for work done and materials furnished shall have a preference over any claim of the contractor, who is primarily obligated therefor, and has said, in effect, that the contract price shall constitute a fund for their protection. It would be grossly inequitable to permit a

contractor, through the device of a recorded incumbrance, to gain for himself an advantage over his creditors. And, of course, what he cannot gain for himself, he cannot gain for his assignee. Or to put it another way—and again upon the law of contract—the contractor, having failed to discharge the claims for labor and material in an amount in excess of the trust deed note, has failed in the consideration agreed to be furnished for the trust deed, and the mechanics' liens therefor must be held to be superior.''

For the reasons above given, the judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.