[Civil No. 4139.   Filed February 26, 1940.]

[99 Pac. (2d) 485.]

ROBERT V. LEESON and OLLIE G. LEESON, His Wife, and FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHOENIX, a Corporation, Appellants, v. W. T. BARTOL, Doing Business as UNION ROCK COMPANY, and ARIZONA SASH, DOOR AND GLASS COMPANY, a Corporation, Appellees.

Messrs. Hayes & Allee and Messrs. Armstrong, Kramer, Morrison, Roche & Duffy, for Appellants.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellee W. T. Bartol; and Mr. A. S. Gibbons, for Appellee Arizona Sash, Door and Glass Company.

ROSS, C. J.—This is an action to foreclose material-men's liens and the only question is as to whether the liens were perfected within the time and in the manner provided by the statutes.

On June 28, 1937, C. D. Bradley entered into a contract with Robert V. Leeson and Ollie G. Leeson, his wife, to build for them on Lot 6, Stanley Place; Maricopa county, a dwelling house and garage, furnishing all material and labor, for the sum of $8,300. On November 25, 1937, the Leesons moved into the premises, at which time they claim the dwelling and garage were completed.

W. T. Bartol, doing business as Union Rock Company, on June 8, 1938, filed with the county recorder a notice and claim of lien on the premises for $123.93 for material furnished the contractor and used in the buildings. Later, on June 29, 1938, he filed another notice in the same words except there was added thereto the name of the wife as one of the owners, or reputed owners. These materials, it is shown, were furnished between July 6, 1937, and August 4, 1937.

The Arizona Sash, Door and Glass Company, on June 18, 1938, filed with the county recorder its notice and claim of lien on the same premises for $933.59 for material furnished the contractor between August 24 and November 27, 1937, and used in the buildings.

July 25, 1938, Bartol filed his suit to foreclose lien and therein made contractor Bradley, the Leesons, the Arizona Sash, Door and Glass Company and the First Federal Savings and Loan Association of Phoenix (mortgage lienholder) defendants. Bradley did not appear or answer, but defaulted. The Arizona Sash, Door and Glass Company filed an answer setting up its claim of lien and asked that it be foreclosed. The Leesons and the Loan Association, among other things, alleged in their answer that the so-called liens were not filed with the county recorder within sixty days from completion of improvements and denied that they were ever served with duplicate copies of the liens.

The court, sitting without a jury, heard the evidence and rendered judgment in favor of the lien claimants. The Leesons and the First Federal Savings and Loan Association of Phoenix, have appealed, and as grounds therefor insist the liens were not perfected within the time and in the manner provided by law.

Section 2021, Revised Code of 1928, gives an original contractor ninety days, and every other person claiming a lien on a building, structure, or improvement sixty days after the completion thereof within which to perfect his lien. It provides, among other things, that the lien claimant

"must make duplicate copies of a notice and claim of lien and file one copy thereof with the county recorder of the county in which the property, or some part thereof, is situated, and within a reasonable time thereafter, serve upon the owner of said building, structure or improvement, if to be found within the county, the remaining copy. Such notice and claim of lien shall be made under oath by the claimant or some one with

knowledge of the facts, and shall contain, a description of the lands and improvements to be charged with the lien, sufficient for identification; the name of the owner or reputed owner of the property concerned, if known, and the name of the person by whom the lienor was employed or to whom he furnished materials; a statement of the terms, time given and conditions of his contract, if the same be oral, or a copy of the contract, if written, and a statement of the lienor's demand, after deducting all just credits and offsets.''

■ The appellee-lien claimants furnished material to Bradley, the original contractor, who, under the statute, is constituted the agent of the owners for the purposes of the lien law, section 2020, Id., so they fall within the class that must perfect their liens within sixty days after the completion of the dwelling and garage contracted to be constructed by Bradley. It is quite obvious that if these improvements were completed November 25, 1937, the liens claimed were not perfected within the sixty days allowed, since no steps were taken to file liens until June, 1938. But the lien claimants insist, and the trial court found, that the buildings were not completed until May 7, 1938, and if that is the correct date, liens filed in June, 1938, with the county recorder were in time.

Ordinarily we would accept without question the trial court's finding to the effect that the liens were perfected within the time allowed by law, but in *Morgan* v. *O'Malley Lumber Co.*, 39 Ariz. 400, 7 Pac. (2d) 252, 253, we said ''trifling adjustments or corrections . . . made long after the expiration period'' would not extend the time for perfecting a materialman's lien, and the appellants contend the facts here bring this case within the rule announced in the Morgan case.

Robert V. Leeson testified on cross-examination as follows:

''Q. Well, isn't it a fact, Mr. Leeson, that the situation was this, that you moved into the house before

you were willing to accept the job as completed?
A. The contractor told us the house was through so far as he was concerned, and that he would make these corrections. He knew what they were.

"Q. And you knew what they were? A. Yes.

"Q. And you continued to insist on him fulfilling the contract? Isn't that so? A. Rightly so.

"Q. And you insisted on that to and including the seventh day of May, 1938, when that final work was done on the basement? Isn't that so? It isn't so? A. Probably would have been calling for it yet if it hadn't been done."

From this testimony we understand that it was agreed that the building job was not complete on November 25, 1937, but that the contractor would see that it was completed later. From then on, the contractor returned to the premises several times to do something toward fulfilling his contract. A plasterer testified that on May 7, 1938, he worked three hours in finishing incomplete work in the basement and in pouring two window sills. On that same day painting was done, as requested by the owners. For the same reason painting was done in the dinette and on the service porch on or about the last of April, 1938. In fact, the contractor from November 25, 1937, to May 7, 1938, did several jobs to make the work conform with the owners' interpretation of the contract.

There is quite a discrepancy in the evidence of the appellees and appellants as to the amount and character of the work that was done on the improvement after November 25, 1937, and up to May 7, 1938. The appellants greatly minimize the amount of work, whereas the appellees' evidence tends to show that the work was substantial in its character. The lower court evidently accepted the evidence of the appellees on the dispute.

To assure that this work would be done, the owners held back from the contractor $164.57 until the latter

would finish his contract to their satisfaction. This balance, which, by the way, was the balance owing on the contract sixty days after November 25, 1937, was paid to the contractor May 11, 1938. If the lien claimants had perfected their liens within sixty days after November 25th, the owners would have had only the above small balance to apply on liens. If the owners are mulcted for more than the contract price, it is their fault in not exacting receipted bills from materialmen for all materials furnished the contractor and used in the improvement before paying the contractor.

The appellee-lien claimants had a right to assume that the owners would hold back from the contractor sufficient funds to care for them for the period of sixty days after the buildings were completed. There is nothing in the record to indicate that the lien claimants acted other than in perfect good faith, or that they had anything to do with the postponing of the completion of the contract. Nor is there anything to indicate that the contractor delayed finishing the improvement for the purpose of injuring or defrauding the owners.

In the *Morgan v. O'Malley Lumber Company* case, *supra,* the improvement was not turned over to the owner with an understanding that it would be completed or finished later, as in this case; and there is no showing that the owner in that case reserved any of the contract price to assure the completion of the work. We do not think the ruling in the Morgan case is controlling here, the facts being different.

Appellee Bartol, it is conceded, complied with the provisions of section 2021, *supra,* requiring a lien claimant to make "duplicate copies of a notice and claim of lien" and file one thereof with the county recorder and within a reasonable time thereafter serve the owner, if to be found within the county, with the remaining copy; but the Arizona Sash, Door and Glass

Company departed from such requirement in this respect: It filed its notice and claim of lien with the county recorder and within a reasonable time thereafter served the owners of the improvement with an exact copy of such notice and claim of lien. The deviation is that the notice and claim of lien was not made in duplicate. Appellants contend that this discrepancy should defeat the lien. The difference between a copy and a duplicate copy is one of mechanics and not of substance. It can make no difference to the owner whether the copy of notice and claim of lien he is served with was made in duplicate or singly. The filing of his claim and notice of lien with the county recorder and serving a copy thereof on the owner is required so that the owner may protect himself and have time to investigate the claim and determine whether it is a proper charge or not. *Arizona Eastern R. Co.* v. *Globe Hardware Co.,* 14 Ariz. 397, 129 Pac. 1104.

■■ We cannot bring ourselves to think the legislature would pass a law giving to laborers and materialmen a lien on an improvement they had labored on, or furnished material for, on condition that they would file a notice of their claim of lien within a given time with the county recorder and serve a copy thereof on the owner, but denying such lien if such paper happened to be a copy instead of a duplicate. Such a construction deals in refinements too nice, and defeats rather than preserves the law's intent. The language of the legislature in section 2021, *supra,* will not bear too close analysis. For instance, instead of duplicates of the notice and claim of lien being required, it provides for duplicate copies thereof. What is to be done with the "notice and claim of lien" or the original, is not stated. To make sense, and to preserve the rights intended to be protected, we must construe the expression "duplicate copies of a notice and claim of lien"

to mean "duplicate notice and claim of lien"; in other words, duplicate originals. We must omit "copies" to make sense, and we should not hesitate to do so, nor should we hesitate to hold that service of a copy of a notice and claim of lien substantially complies with the statute.

We have held, in *State* v. *McEuen*, 42 Ariz. 385, 26 Pac. (2d) 1005, 1008, as follows:

"The first and most important principle of statutory interpretation is that the intent of the Legislature is to be ascertained and followed. *Deyo* v. *Arizona Grading & Construction Co.*, 18 Ariz. 149, 157 Pac. 371, L. R. A. 1916E 1257. The second, at least in Arizona, is that statutes shall be liberally construed to effect their objects and to promote justice. Section 3038, Rev. Code 1928. These principles of interpretation take precedence over all others, the remaining rules being merely ancillary and used to assist in the proper application of the two above set forth. . . . "

If we are to follow what was said in that case, we should hold the service of a copy on the owners complies with the law.

It is no longer necessary to copy an instrument in longhand. Using carbon paper, many copies may be made in one operation and thus time and money are saved. We think the legislature had this thought in mind when it said that "duplicate copies" *must* be made. While mandatory in form, the context and the purpose to be accomplished show it must have been intended to be permissive, that is, that the notice and claim of lien *may* be made in duplicate or in one operation instead of two or more operations as is necessary in making ordinary copies of an original.

Lien laws are remedial and are to be liberally construed. *Wylie* v. *Douglas Lumber Co.*, 39 Ariz. 511, 8 Pac. (2d) 256, 83 A. L. R. 918; *Albert Steinfeld & Co.* v. *Allison Min. Co.*, 41 Ariz. 340, 18 Pac. (2d) 267. Section 2021, *supra*, is brought for-

ward from the Civil Code of 1913 and was paragraph 3640 therein. Omitted from the 1928 revision was paragraph 3642 of the Civil Code of 1913, reading:

"A substantial compliance with the terms of the preceding sections of this chapter shall be deemed sufficient diligence to secure any of the liens provided for in this title, except where other modes of procedure are designated."

This omission from the revision did not have the effect of requiring the lien claimant to be absolutely perfect in making his notice and claim of lien, but the law remained demanding only a substantial compliance with section 2021, *supra,* to secure his lien. *Estate of Sullivan,* 38 Ariz. 387, 300 Pac. 193.

While our attention has not been called to any case involving the exact question we have here, very similar questions have been decided by other courts. We quote from some of them:

"In this cause, which is here heard upon appeal, we hold that the sending of a carbon copy of the affidavit to obtain a lien, which copy is in all respects a duplicate of the original excepting only that it lacks the name of the affiant at the end of the affidavit and the name of the notary at the end of the jurat, accompanied by a letter to the owner stating that the same is a copy of the affidavit filed, all of which is done within the thirty-day period provided for in Section 8315, General Code, is a sufficient compliance with the provisions of said section requiring service on the owner or his agent of a copy thereof." *Lake Erie Lumber & Supply Co.* v. *Marshall,* 11 Ohio App. 416.

"The first objection to the plaintiff's recovery is that the paper served on Seitz was not a true copy of the notice of lien filed in the clerk's office. The notice filed contained the signatures of the claimants at the foot of the lien, and also the signature of Reeves to the verification. The copy served contained neither signature. In these respects, of course, the paper served was not an exact copy of the paper filed; but by section 25 of the lien law of 1885 it is directed that

the act shall be construed liberally, to secure its beneficial interests and purposes, and that a substantial compliance with its several provisions shall be sufficient. If, therefore, the notice served contained all that was requisite under the statute to constitute a valid notice of lien, it was sufficient, . . . " *Reeves v. Seitz,* 47 App. Div. 267, 62 N. Y. Supp. 101.

See, also, *Day* v. *Pennsylvania R. Co.,* 35 Pa. Super. 586; *Ott* v. *Duplan Silk Corp.,* 271 Pa. 322, 114 Atl. 630; *Georgia Lumber Co.* v. *Harrison Const. Co.,* 103 W. Va. 1, 136 S. E. 399.

In *American Coarse Gold Corp.* v. *Young,* 46 Ariz. 511, 52 Pac. (2d) 1181, the case relied upon by appellants to sustain their contention that service of a copy does not comply with the statute, the question involved was whether the lien claimant had served the owner of property with any notice whatever, either a copy or duplicate, and we held the lien involved, in the absence of such showing or some excuse therefor, was not valid. In doing so, we made some remarks on the difference between a copy and a duplicate and indicated, although it was not necessary to a decision, that the owner must be served with a duplicate.

We think the error in this case, if there was error, is of the kind the Constitution (sec. 22, art. VI) directs us to disregard in the interests of justice.

After a thorough consideration of the question involved, we are decidedly of the opinion that the Arizona Sash, Door and Glass Company complied with the statute and perfected its lien in the manner and time provided by law; also that the lien of Bartol is valid.

The judgment of the lower court is affirmed.

McALISTER, J., concurs.

LOCKWOOD, J., Dissenting.—I agree with the opinion of the majority of the court so far as the judg-

ment in favor of W. T. Bartol is concerned, and think it should be affirmed, but I regret that I cannot concur with its conclusions in regard to that portion of the judgment in favor of the Arizona Sash, Door and Glass Company.

Since the reasons given by the majority of the court involve, in my opinion, a repudiation of the construction of the lien statute made by us in *American Coarse Gold Corp.* v. *Young,* 46 Ariz. 511, 52 Pac. (2d) 1181, I shall state briefly the grounds of my dissent.

Section 2021, Revised Code of 1928, sets forth the things necessary to be done in order to create a valid mechanic's lien. It reads, so far as material, as follows:

*"Perfecting lien; notice and claim.* In order to fix and secure the lien herein provided for . . . every . . . person claiming the benefits of this article . . . must make duplicate copies of a notice and claim of lien and file one copy thereof with the county recorder . . . and . . . serve upon the owner . . . the remaining copy. Such notice and claim of lien shall be made under oath by the claimant or some one with knowledge of the facts, . . . "

The record in the present case shows that the agent of the Arizona Sash, Door and Glass Company made triplicate carbon copies of the notice and claim of lien, with the exception of the signature of the agent and the seal of the notary who administered the oath. One of these notices was then actually signed by the claimant and the notary's seal affixed thereto, while the other two copies had the signature of the claimant typewritten in, and instead of the seal being affixed thereto the word "Seal" in parenthesis written thereon. The notary in each case actually signed the jurat. The copy which had the actual signature of the claimant was properly recorded in the office of the county recorder, and the copies which had only type-

written signatures thereon were served upon the defendant Leeson and his wife. The question is whether this procedure complied with the statute.

I agree with the majority that the final test in the construction of a statute is the intent of the legislature which adopted it, and if that intent is clear, no question of expediency should make us give another meaning to the statute. What then did the legislature mean to require of a claimant by section 2021, *supra,* in order to fix and secure his lien?

The first thing is that he must make "duplicate" copies of the notice and claim of lien. What is the meaning of the word "duplicate"? Its meaning as a noun has been decided repeatedly. It is unnecessary for me to cite all of the cases in which it has been discussed, but invariably the essential is that a duplicate is in all respects an original and may always be used as such. I think no case will be found holding to the contrary, while many cases state that a copy otherwise perfect, which lacks something which prevents its being used in all respects as an original, is not and cannot be a duplicate.

Applying this test to the instruments served upon the defendants by the Arizona Sash, Door and Glass Company, it is plain they were not duplicates. If either one had been offered to the county recorder for record, he would have refused to accept it, for the signature of the claimant was not attached thereto. They thus lacked the essential quality of a duplicate, for they could not be used for one of the purposes necessary to the fixing of the lien. Indeed, I do not understand the majority opinion to contend that the instruments served on the Leesons were, as a matter of fact, "duplicates" of the one filed with the county recorder. Apparently the contention is, in substance, that since the copies which were served as a matter of

fact gave notice to the defendants of everything which a true duplicate would have given, and since it is the rule that lien statutes are to be liberally construed in favor of the claimant, no harm was done by the failure to comply with the statute, and many cases are cited as upholding this contention. But in none of these cases did the governing statute require a "duplicate." All that was needed was a "copy" and sometimes not even that.

It is true that laws regulating the enforcement of mechanics' liens are to be liberally construed, but when the legislature over a period of fifty years, in which the Code has been revised four times, has carefully used language which can have but one meaning, it seems to me that even the doctrine of liberal construction should not allow us to give no effect to the very definite and exclusive meaning of the language which it has used, and to substitute something which in our opinion is "just as good."