476 P.2d 836

Elmer F. WAHL and Edward J. Smith, dba Wahl & Smith Refrigeration Company, Clinton Campbell Contractor, Inc., dba Phoenix Brick Yard, an Arizona corporation, Metropolitan Concrete & Materials Co., Ray Lumber Co., an Arizona corporation, and Smith Pipe & Steel Company, a division of the United States Freight Company, a Delaware corporation, Appellants,

v.

SOUTHWEST SAVINGS AND LOAN ASSOCIATION, an Arizona corporation, Appellee.

No. 10074-PR.

Supreme Court of Arizona, In Banc.

Nov. 20, 1970.

Cox & Hedberg, by John C. Hedberg, Phoenix, for appellants Elmer F. Wahl and Edward J. Smith, Clinton Campbell Contractor, Inc., Metropolitan Concrete & Materials Co., Smith Pipe & Steel Company.

Engdahl, Jerman, Butler & Estep, by Charles E. Butler, Phoenix, for appellant Ray Lumber Co.

Renaud, Cook, Miller & Cordova, by Joseph B. Miller, Phoenix, for appellee.

McFARLAND, Justice

This case comes before us on a petition to review a decision of the Court of Appeals, Department B, Division I, which affirmed in part and reversed in part a decision of the Superior Court. Wahl v. Southwest Savings and Loan Association, 12 Ariz.App. 90, 467 P.2d 930. The Southwest Savings and Loan Association, hereinafter referred to as Southwest, brought an action to foreclose 24 separate mortgages, each covering different parcels of real property. The appellants claimed a materialmens lien upon all 24 tracts, together with the buildings constructed thereon. They are hereinafter referred to as Claimants. All of the claims involve the same principles of law with the exception of Ray Lumber Company, (Ray), which had a different statement of facts and presented additional questions. Eighteen of the mortgages were recorded before the construction commenced. While the Claimants originally claimed a materialmens lien against all 24 they abandoned the lien as to the 18 on which mortgages were recorded prior to the commencement of construction. The other six present a different fact situation. The materialmen, including Ray, contend that construction commenced before the recording of the remaining six mortgages. All 24 mortgages including the six were executed and delivered to Southwest in August of 1963. The 18 were recorded September 9, 1963, however, the remaining six were not recorded until October 30, 1963. It is the contention of the materialmen that their liens were established prior to that date. Ray presented an additional question in the courts below,

namely, as to whether the recording of his lien was timely made, and his right to a lien on certain undisbursed mortgage loan proceeds. We accept the decision of the Court of Appeals that Southwest had a prior mortgage on the 18 buildings; also their decision that Ray timely recorded his materialmens lien, and that Ray has no interest in the undisbursed funds. We accepted jurisdiction for the limited purpose of determining the remaining questions involved in the priority between the six mortgages and liens which are: (1) Whether the materialmen had actual or constructive notice of the Southwest mortgage before their liens attached; (2) Whether the materialmens liens relate back to the period before the mortgages were recorded, and (3) As to the proper method of establishing the amount of each of the liens.

█ In the court below, the appellants herein relied on a "one project" theory of construction. Their argument is that, since the project was built by one contractor under one contract with the owner, it was one project. They argue therefore that the materialmens liens should relate back to the time that the general contractor did any labor or furnished any material for the first building. While they abandoned their claim on the 18 recorded before labor or material was furnished they use the same argument as to the remaining six. There remains the three questions presented as to the remaining six buildings.

The first question must be determined under § 33–992, A.R.S.:

"The liens provided for in this article are also preferred to all liens, mortgages and other encumbrances of which the lienholder had no actual or constructive notice at the time he commenced labor or commenced to furnish materials."

The argument of Southwest that the materialmen had constructive notice of the six mortgages for the reason that 18 had already been recorded is without foundation. It could be just as forcefully argued that the failure to record the six at the time the 18 were recorded was notice to the materialmen that the six were not covered by mortgages. Section 33–992 specifically provides that the liens are to be preferred "to all liens, mortgages and other encumbrances of which the lienholder had no actual or constructive notice at the time he commenced labor or commenced to furnish materials." In Leeson v. Bartol, 55 Ariz. 160, 168, 99 P.2d 485, 489, we held: "Lien laws are remedial and are to be liberally construed." Under the facts of the instant case there was neither actual nor constructive notice.

This brings us to the second question as to the date the materialmens liens were established for the remaining six houses. This question likewise requires liberal construction as provided in Leeson v. Bartol, supra.

█ In the stipulation of facts it is shown that three of the six apartment buildings, namely A1, A8 and B1 had footings actually dug prior to the recording of the mortgages October 30, 1963. The footings for the remaining three were dug some time subsequent to October 30th. The stipulation further shows that each of the materialmen, with the exception of Ray Lumber, delivered materials to a common site to be used in the construction of some or all of the apartment buildings on the 24 parcels prior to October 30, 1963. In construing Sec. 2032 of the Arizona Revised Code of 1928, which is substantially the same as § 33–992, A.R.S., in Wylie v. Douglas Lumber Co., 39 Ariz. 511, 8 P.2d 256, 83 A.L.R. 918, we said:

"When a claim and notice of lien is made out and filed according to the statute, it relates back to some act of the contractor or to some act of the lienor himself—to which one of these is the crucial point here. In other words, does the lien claimant's right to a lien under the facts of this case date from the time

the contractor commenced the labor on the property, or from the time each one of the lien claimants commenced to furnish material or labor to the contractor? If the former is the correct date, then the liens here attached first; but, if the latter is the correct date, the mortgage first attached to the property, and should have preference. The present section of our statute fixing preference is 2032, Revised Code of 1928, reading as follows:

" '2032. *Preference over Subsequent Encumbrances.* The liens provided for in this article, unless otherwise herein provided, are preferred to all liens, mortgages or other encumbrances which have attached upon the property, subsequent to the time when the labor was commenced or the materials commenced to be furnished, also, to all liens, mortgages and other encumbrances of which the lienholder had no notice, actual or constructive, at the time he commenced the labor or commenced to furnish the materials.'

"This first found a place in our laws as section 2908, Revised Statutes of 1901. It was amended by section 20, Act No. 90, Laws of 1903, and as amended was carried forward as paragraph 3658 of the Revised Code of 1913. In its present form it is to all intents and purposes the same as it was after the amendment of 1903 and as in the 1913 Code. While it is not verbatim the statute of California (section 1186, Kerr's Code Civ.Proc. 1920), we take it that it was probably borrowed from California and has the same meaning. The latter statute reads as follows:

" '1186. *Effect of Liens.* The liens provided for in this chapter are preferred to any lien, mortgage, or other encumbrance which may have attached subsesequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also, to any lien, mortgage, or other encumbrance of which the lienholder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or the materials were commenced to be furnished.'

"Because of the close similarity of these statutes, we feel the construction placed thereon by the California courts should be very persuasive, if not controlling. If the laborer or materialman performs labor or furnishes material to the contractor under the contract, the courts of California hold his right to a lien attaches 'at the time when the labor was commenced' by the contractor; but, if the laborer or materialman furnishes labor or material under a void contract between the owner and contractor, or furnishes labor or material to the owner-contractor directly, then the lien dates from the time he commences to labor or to furnish material. As will be seen from the quotation below, this rule was first announced in a case wherein the contract between the owner and the contractor was held to be void because of the failure to record it as the law provided. But that does not affect the logic or soundness of the construction. The very recent case of American Building Material Service Co. v. Wallin, 116 Cal. App. 527, 2 P.2d 1007, 1008, approves the rule stated."

In construing a similar statute the California Supreme Court in Pacific Mut. Life Ins. Co. v. Fisher, 106 Cal. 224, 39 P. 758 held:

"The lien commences when the claimant begins to furnish the materials, and includes all the materials that he may thereafter furnish for the building (McCrea v. Craig, 23 Cal. 522, 525), whether they are furnished under an express contract in which the terms and quantity are fixed, or under a contract implied from their purchase and use in the building from time to time as they are needed."

The stipulation shows that materials which were furnished prior to October 30,

1963, by materialmen were for all of the buildings, including the six upon which the mortgage was recorded October 30, 1963.

In Wylie v. Douglas Lumber Co., supra, in speaking of the rights of the respective lien claimants, we said:

"It may be said that such construction of section 2032 defeats the intent and purpose of section 2036. The latter section provides that all labor and material, without reference to the time when furnished or date of filing notice and claim of lien, shall be on an equal footing, and, if upon a sale of property enough is not realized to pay all lien claimants in full, they shall prorate. On the contrary, the construction we have given section 2032 will preserve and effectuate, in a large measure, the meaning of section 2036, especially when the building, structure, or improvement has been made under a general contract. In such case their liens are upon an equal footing, regardless of the date of filing lien or the date of performing work or furnishing material. The one who furnishes the last item of material or does the last work on the building, structure, or improvement is in just as good shape as the one who did the first work or furnished the first material. Their right of lien relates to the same date. No lien, mortgage, or other incumbrance can intervene between the liens when the claimants' rights relate to and originate in a contract between the owner and contractor.

"If, however, the labor is performed or the material furnished directly to and upon the credit of the owner, mortgage liens and other incumbrances may attach to the property between the dates that their rights to their liens accrue, and thereby defeat the equality provided for in section 2036. This loss of equality, however, is in a measure compensated by the personal liability of the owner for the labor and materials, which does not exist when the labor or material is furnished the contractor."

In the instant case the materials were furnished to the contractor, therefore, all the rights of the materialmen, including Ray Lumber, relate back to a date prior to October 30, 1963. This is the same conclusion reached by the Court of Appeals, but upon different grounds.

The third question relating to the method of establishing the amount of a materialmens lien must be determined from the intent of the Legislature. In Wylie v. Douglas Lumber Co., supra, we stated: "We are, however, convinced that our Legislature intended that laborers and materialmen, who contribute of their labor and means to enhance the value of the property of another, should be jealously protected." In Kerr-McGee Oil Industries, Inc. v. McCray, 89 Ariz. 307, 361 P.2d 734, we said: "The Arizona Lien Statutes are remedial and to be liberally construed." And in Leeson v. Bartol, supra, this court said: "Their purpose is that laborers and materialmen *enhancing the value* of another's property should be protected." (emphasis in original). In Blake v. Crystaline Lime Co., 37 Idaho 637, 221 P. 1100 mod. on rehearing, 37 Idaho 643, the Supreme Court of Idaho in explaining the theory of the Materialmens Lien Law said:

"The very foundation of a lien claim under our statute is the performance of labor upon or the furnishing of materials for the construction or improvement of the property upon which the lien is claimed. The theory upon which a lien is given as a prior claim upon the property is that the party claiming the lien has, either by his labor or by the materials furnished, contributed to the construction or improvement of the property upon which the lien is claimed."

Any other theory in regard to establishing the amount of materialmens lien would lead to untold difficulties, particularly in that it might not prove the value of the materials which went into the building. Materials could be delivered at a site for construction but never put into a build-

ing. Some could be stolen and others could be diverted to other projects in which a contractor was building for a third party. It departs from the equitable principle of giving a man a lien for the *actual* labor or materials which he places into a building thereby enhancing the value of another's property. The value of labor and material furnished should not be difficult to establish. As stated by the trial court in its findings of fact in regard to Materialman Metropolitan: "This claimant did not attempt to establish the materials furnished for each apartment building, although it could have since its practice was to do so where tract homes were being built." The same would be true as to the other materialmen. The difficulty arises from the fact that the case was tried upon the theory of one project which included the apportionment theory.

The record does not show the materials, and the value thereof, furnished in the construction of the individual units. The architect was undoubtedly inspecting the buildings during the construction as well as making a final inspection after completion in order to determine whether it was being built in accordance with his plans and specifications, and whether the materials furnished as provided for in the plans were incorporated therein. However there was no evidence of the reasonable value of such materials by the testimony of those who furnished the materials, the architect or builder, or any other person, or persons, with knowledge of the construction.

That part of the decision of the Court of Appeals which is inconsistent with this decision is vacated. The part of the trial court's judgment which is inconsistent with the decision is reversed. The matter is remanded to the trial court for further proceedings not inconsistent with this decision.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.