593 P.2d 307

**George WALLACE and Joan Wallace, husband and wife, Appellants,**

**v.**

**DAVE HANSEN CONSTRUCTION COM-PANY, INC., an Arizona Corporation, USLIFE Title Company of Arizona, an Arizona Corporation, Appellees.**

**No. 1 CA–CIV 3663.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 22, 1979.

Peter A. Neisser, Phoenix, for appellants.

Jennings, Strouss & Salmon by Riney B. Salmon, II, Neil Vincent Wake, Phoenix, for appellee USLIFE Title Co. of Ariz.

Richard V. Campana, Scottsdale, for appellee Dave Hansen Const. Co., Inc.

## OPINION

FROEB, Judge.

George and Joan Wallace (buyers) entered into a contract with Dave Hansen Construction Company, Inc. (seller) for the purchase of a house to be built by seller. The house was built and the escrow at USLIFE Title Company of Arizona (escrow agent) closed in due course. Approximately six months later, the buyers were billed by Arizona Public Service (APS) and Mountain States Telephone and Telegraph Company (Mountain Bell) for a pro rata share of work done by the two utilities in converting the home subdivision to an underground utility area. After the seller and escrow agent refused the buyers' demand that they pay the two bills, the buyers brought this action against them. The seller prevailed in a jury trial and the escrow agent was granted summary judgment. The buyers appeal from both judgments dismissing their complaint.

The buyers raise the following issues against the seller:

(1) Was the interest of APS or Mountain Bell a lien of any kind against the property purchased by the buyers on or before December 8, 1972, when the seller's deed was recorded?

(2) Is the "lien" of APS or Mountain Bell included within the warranty of title of the seller's deed?

(3) Did the trial court err in permitting the seller to mention insurance during his opening remarks?

(4) Did the trial court err in refusing any of the buyers' proposed jury instructions?

(5) Did the trial court err by allowing parol evidence with respect to the agreement between the buyers and seller?

The buyers raise the following issues against the escrow agent:

(1) When an escrow agent has actual knowledge of "liens" adversely affecting title to property during an escrow, must the agent disclose them to a buyer?

(2) When an escrow agent encounters an "underground conversion service area" affecting property and the effect of it is not specifically provided for in escrow instructions, must the agent obtain further instructions before closing?

(3) Did the trial court err in granting the escrow agent's motion for summary judgment on the buyers' amended complaint?

(4) Is the escrow agent entitled to attorney's fees caused by its own omission under the agreements of the parties?

Homeowners in Clearwater Hills Subdivision initiated procedures to petition the Arizona Corporation Commission in May 1970 for the creation of an underground conversion service area pursuant to A.R.S. §§ 40–341–356 which were then in effect but have since been amended.

Notice of the proceedings to form the underground conversion service area was recorded in the Maricopa County Recorder's Office in August 1970. That notice provided, in part:

If, after a hearing, the formation of this Underground Service Conversion Area is approved and ordered by the Arizona Corporation Commission, the lots and parcels described in Exhibit A will be subject to liens covering their respective shares of the conversion costs.

In October 1970, the Arizona Corporation Commission issued Decision No. 40939, ordering, in part:

1. An underground conversion service area is hereby established within the area outlined in red on the map attached hereto as 'Exhibit A' and by this reference made a part hereof, such area to be known as CLEARWATER HILLS SUBDIVISION CONVERSION AREA.

2. Arizona Public Service Company and The Mountain States Telephone and Telegraph Company are hereby authorized to charge the underground conversion costs to each lot or parcel of real property within Clearwater Hills Subdivision Conversion Area. Said underground conversion cost shall not exceed the estimated costs indicated in the joint report admitted in evidence as Petitioners' 'Exhibit B'.

Mountain Bell and APS began construction of the underground conversion service area in March 1972. The escrow officer handling the Wallace-Hansen escrow knew that APS and Mountain Bell were working on the site, but had no instructions from the parties as to either of these potential obligations and closed the escrow without further consideration of them.

The buyers and seller executed their Agreement to Purchase Real Property in October 1972. The escrow instructions were signed the same month. The Joint Tenancy Deed was executed and acknowledged in November 1972, and escrow closed and the deed was recorded in December 1972.

The utility companies, having completed their work in May 1973, perfected their liens, and demanded payment from the buyers in June of that year.

## CLAIMS OF THE BUYERS AGAINST THE SELLER

■ The first claim raised by the buyers against the seller is whether any lien in favor of the utility companies existed before the deed was recorded in December 1972. We hold that APS and Mountain Bell did not then have liens against the property. A.R.S. § 40–350(B) is dispositive as to when the underground conversion cost be-

comes a lien against the real property affected. The version of that section in effect at the time pertinent to this action read, in part:

> The underground conversion cost to be paid by each owner to each public service corporation or public agency concerned shall be a lien separately on each privately owned parcel of real property within the underground conversion service area in favor of such public service corporation or public agency upon recording in the office of the county recorder of the county in which the underground conversion service area is located, of a notice or notices of lien within ninety days after completion of the removal of the overhead system in public places, whether or not the connections to serve the individual lots have been completed, as provided in § 40–349.

█ Under this statute, the charge or assessment for costs involved are only a potential lien until the lien is recorded. We reject the argument of the buyers that the lien "relates back" as does an Arizona mechanics' lien. *See Wahl v. Southwest Savings & Loan Assn.*, 12 Ariz.App. 90, 467 P.2d 930 (1970), *vacated on other grounds*, 106 Ariz. 381, 476 P.2d 836 (1970). The mechanics' lien statute, A.R.S. § 33–992, expressly provides for relation back to the time of the filing of the notice. The statute in force at the pertinent time here did not. In fact, the language of § 40–350(B) expressly provided to the contrary.[1]

The second issue raised against the seller is whether the seller's warranty of title included the "liens" of the utility companies. Since we have held that the utilities did not have liens at the closing of the sale transaction, this question is no longer before us.

The third issue is whether reversible error occurred when the seller mentioned title insurance in his opening statement. Two references were made in argument to the delivery of title insurance by the seller to the buyers. The buyers claim that an inference arose that the claimed loss was covered by insurance. The buyers made a timely motion for mistrial, or, in the alternative, for admonitions by the court. The court denied the mistrial and declined to give admonitions.

█ The rule relating to mention of insurance in a personal injury trial is inapplicable here because reference to title insurance in these proceedings was inescapable. The escrow instructions, which were essential to the evidence in the case, as well as other documents, expressly refer to the issuance of a title insurance policy. The factor of title insurance could not reasonably have been separated from the case. There is no basis for a claim of prejudice under these circumstances and we find no error.

█ The fourth issue is whether the trial court erred by failing to give certain jury instructions. As there is no transcript of trial evidence, we are limited in our review of the propriety of the instructions, both given and refused.

Instruction No. 10 offered by the buyers relates to the parol evidence rule and directs the jury to reject testimony which would contradict, change, or modify the terms and conditions of the written agreements of the parties. We cannot tell, however, what, if any, testimony was offered which would in fact contradict, change, or modify the agreement here involved. Therefore, we cannot decide that there was error in refusing the instruction or, if there were, whether it would be reversible error.

We view the issues concerning the other instructions refused by the court in the same light. We have considered each of

---

1. The time when the lien comes into existence is changed under the amended version of § 40–350(B), which reads, in part:

   > The underground conversion cost to be paid by each owner to each public service corporation or public agency concerned shall be a lien separately on each privately owned parcel of real property within the underground conversion service area in favor of such public service corporation or public agency and shall be effective as of the date of filing of the notice of proposed lien as provided in § 40–343 upon its perfection as provided in subsection C of this section.

them, as well as the instructions which were given by the court, and have found nothing in the record upon which reversible error may be predicated.

■ The fifth issue is whether the trial court erred by allowing parol evidence with respect to the Agreement to Purchase Real Property. As earlier stated, we do not have a transcript of such testimony and we cannot determine what, if any, testimony the trial court admitted into evidence. The record discloses nothing which constitutes reversible error and we, therefore, reject the claim of error.

As we have resolved these issues against the buyers, the judgment in favor of the seller is affirmed.

## CLAIMS OF THE BUYERS AGAINST THE ESCROW AGENT

The first issue of the buyers against the escrow agent is whether an escrow agent is negligent in failing to disclose to a buyer its knowledge of "liens" affecting title to the property. Since we have held that the claims of APS and Mountain Bell were not liens at the time of the close of escrow, we do not reach this issue.

A separate contention made by the buyers is that APS and Mountain Bell held valid mechanics' and materialmen's liens pursuant to A.R.S. § 33–981, as well as liens under A.R.S. Title 40. We reject this theory without further discussion since the record does not reveal any such liens were filed by APS or Mountain Bell.

The second issue is whether the escrow agent, upon discovering an underground conversion service area affecting the property had a duty to inform the parties and obtain additional instructions.

■ The escrow instructions provide that "improvement lien assessments" were to be paid by the seller. It is clear that there was in existence at close of escrow no "improvement lien assessment" in favor of either APS or Mountain Bell. The escrow agent, therefore, carried out its express written directions provided in the escrow instructions when it closed escrow without making a charge to the seller for the expense of the underground utilities.

■ The buyers argue that the escrow agent, nevertheless, had a duty to inform them of the existence of the Notice of Proposed Lien before the escrow closed. Apparently the escrow agent knew of the Notice because it is listed as an exception on the title insurance policy issued to the buyers at close of escrow. Whether the escrow agent owed a duty to inform the buyers and request further instructions prior to close of escrow is answered by reference to paragraph 47 of the escrow instructions, which states:

> 47. NOTE: There are some matters which USLIFE TITLE COMPANY of Arizona does not attempt to investigate or determine and for which it assumes no liability. While not a complete list, experience has shown that among these, the following deserve your particular consideration:
>
> *   *   *   *   *   *
>
> (i) Proposed improvement assessments, not yet liens.

The Notice of Proposed Lien is a proposed improvement assessment, not yet a lien and, thus, covered by subparagraph (i). As the escrow agent assumed no liability for this matter, we hold that it had no legal duty as escrow agent to advise the buyers and request further instructions.

The third issue against the escrow agent is whether the trial court properly granted the motion for summary judgment against the buyers.

The motion was grounded on the argument that there was in existence at close of escrow no lien in favor of APS or Mountain Bell and, therefore, no omission on its part in closing the escrow without informing the buyers of the Notice of Proposed Lien.

■ The fact question concerning knowledge of the respective parties of the Notice of Proposed Lien prior to close of escrow was indirectly raised, but is of no import since the propriety of the summary judgment turns on a question of law and resolution of potential fact issues is immaterial.

The remaining issue relates to attorney's fees. The trial court awarded the escrow agent attorney's fees in accordance with a provision in the escrow instructions. The buyers argue that the negligence of the escrow agent is a bar to recovery of attorney's fees. The issue is moot since we have decided there was no negligence on the part of the escrow agent.

The judgments are affirmed.

DONOFRIO, Acting P. J., and HAIRE, J., concur.