In re THOMAS A. CARY, INC., Bankrupt.

NATIONAL PERMANENT FEDERAL SAVINGS & LOAN ASSOCIATION and Lawyers Title Insurance Corporation, Plaintiffs-Appellants,

v.

VIRGINIA CONCRETE COMPANY, INC., Defendant-Appellee.

NATIONAL PERMANENT FEDERAL SAVINGS & LOAN ASSOCIATION and Lawyers Title Insurance Corporation, Plaintiffs-Appellants,

v.

RILEY BUILDING SUPPLY, INC., Defendant-Appellee.

No. 74–631–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

May 7, 1976.

Gregory U. Evans, Arlington, Va., for Nat. Perm. Fed. Sav. & Loan Assn.

Russell S. Rosenberger, Jr., Fairfax, Va., for Lawyers Title Ins. Corp.

D. Ikran V. Kavaljian, Jr., Alexandria, Va., for Virginia Concrete Co., Inc.

William F. Roeder, Jr., Fairfax, Va., for Riley Building Supply, Inc.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on appeal from the determinations of the Bankruptcy Judge. Thomas A. Cary, Inc., was a general contractor, for a subdivision located at Section 2, Treeside, Herndon, Virginia. Memoranda of mechanic's liens were filed by Virginia Concrete Company, Inc. (hereinafter referred to as "Virginia Concrete"), and Riley Building Supply, Inc. (hereinafter referred to as "Riley"), pursuant to Virginia statutory requirements.

In June of 1974, Thomas A. Cary, Inc., the developer of Treeside II, executed several deeds of trust to National Permanent Federal Savings & Loan Association (hereinafter referred to as "National Permanent") to secure the payment of deed of trust notes. Prior to the lien filings, Lawyers Title Insurance Corporation (hereinafter referred to as "Lawyers Title") issued title insurance binders to National Permanent which contained mechanic's liens exceptions. However, at a subsequent time, Lawyers Title removed the mechanic's liens

exception on twenty-five (25) of the lots before these liens were filed.

Plaintiffs-Appellants, National Permanent Federal Savings & Loan Association and Lawyers Title Insurance Corporation designate the following issues for review on appeal:

(1) Did the Bankruptcy Judge err in finding that the defendant was entitled to file a joint or blanket mechanic's lien on the entire subdivision in the instant case under the mechanic's lien laws of the Commonwealth of Virginia?

(2) Did the Bankruptcy Judge err in his finding that the defendant's lien was not forfeited in accordance with Section 43–23.1 of the 1950 Code of Virginia, as amended?

(3) Do the mechanic's lien laws of the Commonwealth of Virginia violate the due process and equal protection provisions of the Constitution of the United States and the Constitution of Virginia, thereby rendering the defendant's lien constitutionally invalid?

The Court will treat the first and second issues together and consider the third issue on its own merits. The constitutionality of the mechanic's lien statute will be discussed first because if the Court finds that the statute does not meet constitutional muster, then it will be unnecessary to decide the viability of joint liens.

The Court is compelled to accept the Bankruptcy Judge's findings of fact unless the findings are clearly erroneous. Rule 810, Federal Rules of Bankruptcy. The first two issues contain mixed conclusions of fact and law. Both Virginia Concrete and Riley are defendants-appellees. Their cases will be discussed together. Factual variances peculiar to each defendant-appellee which may affect the outcome will be noted.

## I

### The Unconstitutionality of the Virginia Mechanic Lien Statute

National Permanent and Lawyers Title challenge the constitutionality of the Vir-

ginia mechanic's lien statute, Section 43–3, Code of Virginia (1950, as amended), on the grounds that it violates the due process clause and equal protection clauses of the Fourteenth Amendment.

The rights and relationship between debtors and creditors have been extensively analyzed in recent years by the United States Supreme Court. Commencing with *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Supreme Court entered into the finance and debt area. The Court concluded that a Wisconsin law was unconstitutional that permitted the garnishment of wages or salary without prior notice or hearing and without an opportunity for the debtor to free the assets until after the case was decided on the merits. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court held that Florida and Pennsylvania statutes providing for writs of replevin violated the Fourteenth Amendment because the statutes did not require notice and a hearing prior to the issuance of the replevin writs. The *Fuentes* Court stated that procedural due process protections attach whenever any significant property interest is involved. The third decision in this line of cases was *Mitchell v. W. T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). *Mitchell* involved a vendor's lien. The Court reasoned that a Louisiana statute permitting a judge to issue, without prior notice and hearing, a writ of sequestration based on vendor's lien adequately balanced the interest of creditor and debtor satisfying the requirements of due process. In the last term, the Supreme Court held unconstitutional on due process grounds a Georgia statute that allowed a clerk to issue a writ of garnishment affecting a corporate bank account on the basis of an affidavit containing only conclusory allegations entitling the creditor to a writ. *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

The mechanic's lien statutes of other states have been challenged and, in most decisions, have been held constitutional.

The Supreme Court has not addressed the constitutionality of mechanic's liens. Recently, the Court granted certiorari and vacated the judgment of the Connecticut Supreme Court decision that its mechanic's lien statute was unconstitutional. The judgment was vacated for a determination whether the Connecticut decision was based on the Connecticut or United States Constitutions. *Roundhouse Construction Corporation v. Telesco Masons Supplies Co.,* 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29, 44 U.S.L.W. 3199 (October 7, 1975).

The leading case involved a challenge to the mechanic's lien statute of Arizona. *Spielman-Ford, Inc. v. Hanson's, Inc.,* 379 F.Supp. 997 (D.Ariz.1973), aff'med 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). In *Spielman,* materialmen recorded liens on a mobile home park after they had provided labor and supplies and had not been paid. The owners of the mobile home park sought a declaration from a three-judge court that the mechanic's lien statute violated its constitutional right of due process.[1] The challengers argued that the filing and recordation of a lien without prior notice or hearing prohibits the property owner's right to alienate freely. The property owners reasoned that this was a "significant property interest" within the terms of *Fuentes, supra,* and thus requires the panoply of rights afforded by the due process clause of the Fourteenth Amendment. The three-judge District Court disagreed. In contrast to *Sniadach, Fuentes,* and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court held that the property owners had not been deprived of possession or use of their property. The property owners were permitted to have continuous possession and enjoyment of their property. Although realizing the lien clouds a title, the Court concluded:

"Even though a willing buyer may be more difficult to find, once he is found

there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed, and the difficulties which the lien creates may be ameliorated through the use of bonding or title insurance." *Spielman-Ford, supra,* at 999.

Two other District Courts have followed the *Spielman* decision. *In Re The Oronoka,* 393 F.Supp. 1311 (D.Maine, 1975);[2] *Brook Hollow Associates v. J. E. Greene, Inc.,* 389 F.Supp. 1322 (D.Conn.1975).

■ The Supreme Court summarily affirmed the *Spielman* decision. It is undisputed that the summary affirmance of an appeal from a decision of a three-judge court is binding upon inferior courts. *Edelman v. Jordan,* 415 U.S. 651, 671, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662, 677 (1974). The *Spielman* court held that the lien was not a "significant property interest." In *Fusari v. Steinberg,* 419 U.S. 379, 391, 95 S.Ct. 533, 541, 42 L.Ed.2d 521, 530, Chief Justice Burger elaborated on the significance of summary affirmance:

"When we summarily affirm without opinion the judgment of a three-judge District Court we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by the Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established. . . ."

Nevertheless, this Court believes that it is appropriate to rely upon the holdings of the other District Courts. The decision in

---

1. Although the instant issue arises by means of an appeal from an adverse determination of the Bankruptcy Judge a different result is not dictated nor is reliance on *Spielman, supra,* brought pursuant to 42 U.S.C. § 1983, misplaced.

2. This case arose in circumstances similar to the instant case when liens were filed on the property of an individual in bankruptcy.

*Spielman* was rendered two weeks after the Supreme Court's decision in *Mitchell v. W. T. Grant, supra.* Therefore, the *North Georgia Finishing, Inc. v. Di-Chem, Inc., supra,* decision is the only Supreme Court decision that must be considered for purposes of the instant challenge. The Supreme Court did not alter or refine the concept of significant property interest enunciated in its prior decisions. Therefore, the Court does not believe that its reliance upon *Spielman* and the other District Court decisions is misplaced. Additionally, a Virginia court has upheld the constitutionality of the mechanic's lien statute. *Davey Tree Expert Co. v. Jeffrey Sneider & Co., Inc.,* Chancery No. 45660 (Cir.Ct., Fairfax Cty., Nov. 18, 1975).

The Court is mindful that that the Maryland Court of Appeals has declared its mechanic's lien statute unconstitutional on due process grounds. *Barry Properties, Inc. v. The Fick Bros. Roofing Co.,* 353 A.2d 222, 44 L.W. 2286 (Md.App.1976). Disagreeing with the Federal court decisions, the Maryland court concluded that the property owner "no longer has unfettered title" and therefore, the lien is a "significant property interest" requiring the requisites of due process—notice and a hearing.

The Court believes the wiser course is to follow the decisions of the other District Courts. The Court, therefore, holds that the Virginia mechanic's lien statute does not violate the due process clause of the Fourteenth Amendment.

## II

### Joint Mechanic's Lien

Virginia Concrete and Riley filed memoranda of mechanic's liens on November 14, 1974, in Fairfax County, Virginia. Virginia Concrete provided ready mixed concrete to the Treeside subdivision in the Town of Herndon, Virginia. According to Virginia Concrete's memorandum, the value of the materials provided was $53,802.64. The lien was filed against fifty lots of the subdivision as one entity. Virginia Concrete did not allocate the materials to a particular lot

but attributed the materials to the totality of the lots.

Riley provided materials and supplies to the subdivision during the course of the development of Treeside, Section Two, in Fairfax County, Virginia. Riley filed a memorandum of mechanic's lien on November 19, 1975, in the amount of $264,607.35. Riley filed a joint lien against fifty subdivision lots. It did not attribute the materials and supplies to a particular lot of the subdivision.

The initial issue before the Court is whether Virginia Concrete and Riley had the right to file joint liens. The parties have stipulated that except for the exceptions noted on appeal the defendants-appellees properly and timely filed their liens pursuant to the statutory requisites. The parties do not dispute the amount of indebtedness as provided for in the liens.

The Bankruptcy Court held that the filing of joint liens by Virginia Concrete and Riley was proper under Virginia law. Virginia statutes governing the provisions of mechanic's liens provides no explicit bar against the filing of joint liens. The mechanic's liens statutes do not intimate whether the usage of joint liens is appropriate.

There is not a plethora of precedents on the legality of joint liens. The parties focus on the few Virginia cases discussing joint liens. The following cases are the controlling ones: *Sergeant v. Denby,* 87 Va. 206, 12 S.E. 402 (1890); *Weaver v. Harland Corporation,* 176 Va. 224, 10 S.E.2d 547 (1940). Although other cases are cited by the parties, they have only ancillary relevance to the issue before the Court.

National Permanent and Lawyers Title do not dispute that the Virginia courts have recognized the use of joint liens. They contend that the recognition in *Sergeant v. Denby, supra,* is limited to the facts of that case. The plaintiffs-appellants argue that this position is reinforced by later decisions by the Virginia Supreme Court, particularly *Weaver v. Harland, supra.* Riley and Virginia Concrete disagree and assert that the

holding in *Sergent v. Denby, supra* is still viable and has not been effectively overruled by *Weaver v. Harland.* A scrutiny of these cases and the policy considerations underlying them is necessary to decide the issue.

*Sergeant v. Denby* involved the construction of two houses in close proximity to each other. The contract provided for payment in lump sum for both buildings. The subcontractor had provided certain materials to the houses and after completion of the second house, filed a joint lien on both houses and lots. The owner, Sergeant, challenged the validity of the joint lien arguing that the statute did not provide for a lien and further, that a lien must be separate and distinct on each building for the materials delivered for its construction. The mechanic's lien statute employed in *Sergeant* does not differ materially from the statute the defendants-appellees proceeded under in the filing of the mechanic's liens at issue.[3] The Supreme Court of Virginia concluded that the lien was valid for two reasons. First, a separate contract for each house was not negotiated. Second, the contract did not provide that a separate account for materials should be maintained for each house. The contract was for both houses and the materials contracted for were for the entire job and not each house separately. Therefore, "the two buildings must be considered as, in effect, one piece of work," *Sergeant v. Denby, supra*, 87 Va. at 208, 12 S.E. at 402, for purposes of the lien. The Court noted that the fact that the houses were not contiguous but rather across the street from each other was not a "distinction in principle" because the lien rights did not have their genesis in the situs of the property but rather the rights flowed from and were defined by the provisions of the contract. Finally, the Court added that the result was not vitiated by the fact that the plaintiff was a subcontractor because the contract constituted "a sufficient foundation for the lien asserted." *Sergeant v. Denby, supra*, 87 Va. at 209, 12 S.E. at 402.

National Permanent and Lawyers Title argue that *Sergeant* is not controlling. Their reading of *Sergeant* is that the case is limited to lien disputes between general contractors, subcontractors and owners and is inapposite in suits between innocent non-contracting parties.

National Permanent and Lawyers Title contend that their argument is bolstered by the decision of *Weaver v. Harland, supra.* Harland Corporation was in the process of developing a housing subdivision. Money was borrowed for construction which was secured by a first deed of trust on the properties. There was a separate deed of trust on each house and lot securing the construction loan and also a separate deed of trust on each one securing the unpaid balance of the purchase price of each lot. Materialmen supplied both labor and materials to twenty houses to be erected on the lots owned by Harland Corporation. Materialmen supplied materials as they were requested and were partially paid. Me-

---

**3.** The statute used in *Sergeant* provided in part: ". . . 'all artizans, builders, mechanics, lumber dealers and other performing labor or furnishing materials for the construction, repair or improvement of any building or other property, shall have a lien, as hereinafter provided, upon such property, and so much land therewith, as shall be necessary for the convenient use and enjoyment of the premises, for the work done and materials furnished,' . ." § 3, Ch. 115, Va.Code 1873.
The current statute provides:
"All persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure perma- nently annexed to the freehold, and all persons performing any labor or furnishing materials of like value for the construction of any railroad, shall have a lien, if perfected as hereinafter provided, upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof, and upon such railroad and franchises for the work done and materials furnished. But when the claim is for repairs or improvements to existing structures only, no lien shall attach to the property repaired or improved unless such repairs or improvements were ordered or authorized by the owner, or his agent." Section 43-3, Code of Virginia (1950, as amended).

chanic's liens were filed by two material-men when Harland was unable to fulfill its obligations. In one instance, the lien was filed against twelve (12) houses and lots and in the other, against eight (8) for materials furnished for all twenty (20) houses and lots. Several houses and lots were released from their liens upon payments to the materialmen. The memoranda of liens did not indicate the quantity, value or character of materials.

The Virginia Supreme Court isolated the issue to the effect of the releases of portions of the houses and lots upon the liens' validity against the others for the alleged remaining balances. The Court concluded that the partial release of the properties precludes assertion against the remainder. This holding is limited to instances in which other lien creditors are affected and would not be applicable to disputes between the owner and materialmen. The theory underlying this decision is that it would give lienors license "to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity." *Weaver v. Harland, supra,* 176 Va. at 227, 228, 10 S.E.2d at 548. The Court elaborates on its holding, re-emphasizing the fact that when the dispute is a "contest for priority of encumbrances" between lien-holders or between equally meritorious classes of creditors, then justice and equity would not permit the use of joint liens. The Virginia Supreme Court reasoned that innocent parties are subject to injury by the practice of joint liens. In *Weaver,* the materials were commingled preventing the parties from allocating the materials to any particular building or structure. The problem is posed how the lienors are able to exercise a release when they were initially unable to allocate the materials. The Court noted that its holding in *Sergeant v. Denby, supra,* was limited to disputes between general contractors and owners and inferred that a different result may be dictated when the interests of third persons are involved.

The cases of *Sergeant* and *Weaver* are not easily reconciled. *Sergeant* approves the use of joint liens but appears to curtail the usage to disputes between contractors and owners. The holding of *Weaver* is limited to the effect of releases on mechanic's liens; however, a substantial portion of the language and other opinions cited addresses the impermissible use of joint liens. It is evident that the dicta of *Weaver* goes beyond the holding which is relegated to the issue of releases. The Court must examine the instant facts and the policy considerations raised by these cases.

■ Riley delivered materials to a general site and did not allocate the materials to a specific lot. Although Riley prepared model schemes which were used to calculate the amount of materials that might be needed, the Court does not believe that the preparation of the model and the estimates derived from it bound Riley. Nor does the Court believe that based upon the models, Riley should be required to allocate the materials to specific lots and structures. The record indicates that Riley sent some materials to the bankrupt's mill for prefabricating. It is not feasible for Riley to be responsible and accountable for materials that were delivered on a request basis. The record substantiates that materials were not shipped on a lot by lot basis but rather were shipped by quantities of materials. Riley maintained the account as a single open account with a provision for changes in material prices. In light of these practices, the Court believes that the filing of a joint lien against the entirety of the subdivision was appropriate.

In contrast to *Weaver,* Riley has not engaged in the practice of releasing some properties and simultaneously claiming a lien against the remaining properties. Riley has properly filed its liens and seeks recovery of its investment for materials. The harm associated with releases is obvious. If a joint lien is filed, the premise

underlying the filing is that the materials may not be segregated and allocated to a specific lot or structure. By its nature, a joint lien confesses an inability to attribute the materials with particularity. Releases belie this inability to allocate. If a lienor is able to issue a release of some of the lots and structures, then it is obvious that the lienor has the capacity to allocate the materials among various properties. Releases are the fatal defect to a claim that the materials may not be attributed to a specific property. In *Weaver*, lienors released some of the properties after partial payment and correspondingly reduced the amount of money sought from the owner. The irony of the situation is that the plaintiffs in *Weaver* persisted in their claim pursuant to the joint lien against the unreleased properties. The logic of the holding of the Virginia Supreme Court is compelling. If, after payment of some of the monies owing, the plaintiffs were able to release a portion of the properties, then they could have ascertained *ab initio* which materials were used in the buildings or structures.

Neither Riley or Virginia Concrete have negotiated any releases. Therefore, the Court must consider this case in that posture. The Court concludes that Riley has made a viable legal claim by its filing of a joint lien under the Virginia mechanic's lien statute.

■ The position of Virginia Concrete is not dissimilar to Riley. Although there was not a contract between Virginia Concrete and Cary, an open account was maintained for materials delivered to the subdivision. The record shows that Virginia Concrete supplied the concrete as it was needed and that one truckload of concrete could be poured on several lots at the direction of the site manager. Furthermore, the record reflects that curbs and gutters were poured which are dedicated to the public and are unable to be attributed to a particular lot.

It is undisputed that the supplying of concrete falls within the ambit of the mechanic's lien statute. The timeliness and notice requisites of the filing by Virginia Concrete are not challenged. The Court is of the opinion that the actions of Virginia Concrete were appropriate and that the joint lien was a suitable legal method to effectuate its claim against Cary. Virginia Concrete has not engaged in any releases that would jeopardize its remaining claim against Cary.

■ The policy considerations of which party is better equipped to protect itself and with whom equity rests must be addressed. National Permanent and Lawyers Title urge that the burden is upon the materialmen and suppliers to substantiate their claims on a lot by lot basis because they were better able to undertake such a task. The Court is not persuaded by this argument. National Permanent as lender may require the filing of lien waivers of all labor and materialmen as a condition of releasing increments of the construction loan. The lender may employ a variety of other means to protect itself. The Court does not believe that it should intercede because the lender did not avail itself of these protective measures. The essence of the mechanic's liens laws is to protect materialmen when they have provided supplies and have not been compensated. In enacting the mechanic's liens statute, the Commonwealth of Virginia has enunciated its policy consideration that materialmen and suppliers should be paid or have the recourse of lodging a lien against the property. The Court does not believe that this policy should be vitiated when a subdivision and joint liens are involved. The nature of the development of a subdivision provides impediments to the use of a single lien. The practice of supplying materials in bulk and not to a specific lot or building—a practice that Cary and by implication, National Permanent was cognizant of—could have been restricted by National Permanent.

Lawyers Title is in the business of insuring property. The Court does not believe that the equities should favor a company whose *raison d'etre* is to undertake risks in this area. In fact, with twenty-five (25) of

the lots, Lawyers Title guaranteed against mechanic's liens.

The Court finds that the findings of the Bankruptcy Judge regarding the forfeiture procedure of 43–23.1 was not clearly erroneous.

Therefore, the Court concludes that both the policy and equitable considerations favor the materialmen, Virginia Concrete and Riley. The Court holds that the use of joint liens in these circumstances was appropriate and complied with both Virginia statutory and decisional law.

In conclusion, the Court sustains the findings of fact and conclusions of law of the Bankruptcy Judge.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.