614 P.2d 865

MICHAEL WELLER, INC., an Arizona Corporation, Plaintiff-Appellant,

v.

The AETNA CASUALTY AND SURETY COMPANY, a Connecticut Corporation, Howard N. Mizener and Lavern C. Mizener, husband and wife, John R. Lee and Kathryn Lee, husband and wife, Forrest B. Tuttle and Nana L. Tuttle, husband and wife, David J. Funk and Barbara N. Funk, husband and wife, Chuck Purcell Carpet Distributors, Inc., a Colorado Corporation, Scottsdale Park Villas Incorporated, a Nevada Corporation, Kaufman Mortgage SPV, a general partnership, Beneficial Standard Mortgage Investors, a Real Estate Investment Trust, The Valley National Bank of Arizona, a national banking association, Arizona Trust Deed Corporation, an Arizona Corporation, as Trustee, Southwest Savings and Loan Association, an Arizona Corporation, Joseph F. Link and Norene M. Link, his wife, as joint tenants with right of survivorship, John Stuart Babb, a single man, Eleanor C. Knippel, an unmarried woman, Margaret M. Arbuckle, a widow, Roy C. Collins and Linda J. Collins, his wife, as joint tenants with right of survivorship, Kenneth R. Stafford, an unmarried man, Charles E. Wait and Carolyn J. Wait, his wife, as joint tenants with right of survivorship, A. Gordon Phillips and Gertrude G. Phillips, his wife, as joint tenants with right of survivorship, Walter E. Crowel and Phyllis J. Crowel, his wife, as joint tenants with right of survivorship, E. Lamar Gostin and Marie P. Gostin, his wife, as joint tenants with right of survivorship, Jay Michael Martin and Jane Bennett Martin, his wife, as joint tenants with right of survivorship, William A. Wolfe and Margaret K. Wolfe, his wife, as joint tenants with right of survivorship, Ralph E. Smith and Jeannette J. Smith, his wife, as joint tenants with right of survivorship, Nancy W. Spooner, a widow, Lawrence T. Holmes and Dorothy A. Holmes, his wife, as joint tenants with right of survivorship, Robert E. Nealon and Kathleen E. Nealon, his wife, as joint tenants with right of survivorship, Antonio J. Castillo and Patricia L. Castillo, his wife, as joint tenants with right of survivorship, Rodney R. Hinton and Sarah J. Hinton, his wife, as joint tenants with right of survivorship, Rex T. Meyer and Margaret F. Meyer, his wife, as joint tenants with right of survivorship, The First National Bank of Colorado Springs, The Arizona Bank, an Arizona Corporation, The Arizona Bank, an Arizona Corporation, as Trustee, William R. Hulings and Joan Hulings, husband and wife, Jane Gliege, wife of Gerhardt J. Gliege, and Howard Homes, Inc., a Nevada Corporation, Defendants-Appellees.

No. 1 CA–CIV 4349.

Court of Appeals of Arizona, Division 1, Department C.

May 1, 1980.

Rehearing Denied June 9, 1980.

Review Denied July 1, 1980.

Barry Allen Reiss, P. C., Phoenix, for plaintiff-appellant.

John G. Gliege, Scottsdale, for defendants-appellees Charles E. and Carolyn J. Wait; William R. and Joan Hulings; and Jane Gliege.

Alston, Edwards, Scott & Novak, P. C. by Robert J. Novak, Phoenix, for defendants-appellees Howard N. and Lavern C. Mizener; Forrest B. and Nana L. Tuttle; David J. and Barbara N. Funk; John R. and Kathryn Lee; and Chuck Purcell Carpet Distributors, Inc.

Duecy, Moore, Robinson & Bennett by Lewis B. Moore, Jr. and William F. Bennett, Scottsdale, for defendants-appellees Ralph E. and Jeannette J. Smith; and E. Lamar and Marie P. Gostin.

John S. Schaper, Phoenix, for defendant-appellee First National Bank of Colorado Springs.

Jennings, Strouss & Salmon by Gary G. Keltner, Phoenix, for all remaining defendants-appellees.

## OPINION

JACOBSON, Judge.

The primary issue on this appeal from the granting of a motion for summary judgment is whether a mechanic's and materialman's notice and claim of lien purporting to

cover 47 lots in a subdivision without designating the amount claimed on each individual lot complies with the statutory requirement of perfecting the lien.

This litigation was commenced by plaintiff-appellant, Michael Weller, Inc. (Weller) against Howard Homes, Inc. (Homes), various lending institutions and individual purchasers of lots in Scottsdale Park Villas, a subdivision located within the city limits of Scottsdale. Weller's complaint sought (1) the balance due under a construction subcontract, (2) to foreclose a mechanic's lien and (3) to impose liability upon The Aetna Casualty Insurance Co. (Aetna) as surety on a bond posted for Homes.

Following various amendments to the original complaint and the filing of answers by some of the defendants, some of which were not verified, a portion of the defendants moved for summary judgment on the basis that Weller's notice and claim of lien upon which it sought foreclosure was invalid either on the basis that it did not comply with statutory requirements or that it was filed untimely. These motions for summary judgment were granted in defendants' favor and a written judgment was filed containing the requisite finality language of Rule 54(b), Arizona Rules of Civil Procedure. In addition, the trial court refused to enter default judgments against various non-appearing defendants and by its judgment declared Weller's lien invalid as against all defendants, including those who did not appear. Weller timely perfected an appeal from that judgment.

Subsequently Aetna filed a motion for summary judgment, asserting that liability never accrued for Weller's debt under its bond. This motion was also granted in a written judgment containing the appropriate Rule 54(b) language. A timely appeal by Weller was likewise perfected from that judgment.

At that point, there remained to be litigated in the trial court the amount of indebtedness, if any, owed by Homes to Weller; the amount, if any, due Homes from Weller on its counterclaim for poor workmanship; and various cross-claims and third-party complaints. In connection with these remaining issues, Weller filed various motions to compel directed to Homes' answers to interrogatories propounded by Weller. These motions to compel were denied by the trial court and Weller has sought to appeal this order of denial.

The facts as developed by affidavits and depositions used in connection with the various motions for summary judgment are that prior to September 13, 1972, Homes was the owner of a large tract of land known as Tract R, Paseo Village, located in Scottsdale, Arizona. On September 13, 1972, Homes recorded a subdivision plat which comprised a portion of Tract R, known as Scottsdale Park Villas. The plat divided the subdivision into 48 separate residential lots and tracts A, B, C, D, E, F, G, H, I, J, K, L and M. The alphabetically designated tracts comprise common use areas and recreation facilities.

On October 13, 1972, Homes entered into a subcontract agreement with the predecessor in interest of Weller, whereby Weller agreed to perform certain drywall and painting work at "Scottsdale Park Villas, Tract R, located in Paseo Village, a recorded plat in Maricopa County, Scottsdale, Arizona," and Homes agreed to pay Weller $105,356. This subcontract was part of an overall construction project by Homes to build 48 residential homes and a recreation building and to improve certain common areas.

The subcontract between Homes and Weller specifically provided:

Payments on all units are to be made on the following schedule for completed units, drywall and paint, less 10% retainage; retainage to be paid after final City inspection:

| | | | |
|---|---|---|---|
| Unit A | — $2,210. x 7 | = | $15,470. |
| Unit B | — 1,910. x 16 | = | 30,560. |
| Unit C | — 2,010. x 17 | = | 34,170. |
| Unit A2 | — 2,410. x 8 | = | 19,280. |
| Recreation building — | | | 2,800. |
| Common area | — | | 3,076. |
| TOTAL AMOUNT OF CONTRACT | | | $105,356. |

Prior to commencement of construction, Homes obtained individual building permits for each of the 48 lots from the City of Scottsdale. In addition, individual final in-

spections by the City of Scottsdale were performed on each residence. These final inspections (that is, when a building or construction was completed, and all electrical, plumbing, and mechanical fixtures were in place, but prior to occupancy) were conducted on all 48 residences in the time period between February 8, 1973 and August 1, 1973.

On June 8, 1973, Weller submitted an invoice to Homes showing the work to be performed by it was "100% complete" and claimed a balance due under the subcontract of $15,856.58. Apparently, a dispute arose concerning the quality of the workmanship of Weller and Weller's bill went unpaid.

On January 4, 1974, Weller recorded its notice and claim of lien in the amount of $24,463.83 and described the property to be covered by the lien as:

> Lots 1 through 47, SCOTTSDALE PARK VILLAS, according to the Plat of Record in the Maricopa County Arizona Recorder's office in Book 154 of Maps, Page 14.

While under Weller's subcontract it was to perform work on lot 48 and the alphabetically designated tracts of the subdivision, these were not included in its notice and claim of lien. In addition, the notice and claim of lien did not specify what portion of the claimed $24,463.83 was due and owing on any particular one of each of the 47 lots subject to the lien.

The sole basis of Weller's claim of liability against Aetna is as surety for Homes under its bond issued pursuant to A.R.S. § 32–1152. Aetna became a surety for Homes on June 30, 1973 and its bond remained in effect until October 20, 1974. Based upon Weller's "100% complete" invoice of June 8, 1973, Aetna moved for summary judgment on the basis that the work performed by Weller was completed prior to it incurring liability on its bond. In response to this motion, Weller filed an affidavit, which appellant's opening brief indicates stated in part as follows:

> [P]ainting and drywall materials and services were furnished and rendered to Howard Homes by Plaintiff and its as-

signor from October, 1972, to and including November 30, 1973, pursuant to the Subcontract, that Plaintiff has not been paid therefor, and that the balance due Plaintiff therefor is the sum of $24,-463.83.

Brief for Appellant at 36–37.

On appeal, Weller urges the following as points of error:

1. That the failure of some of the defendants to verify their answers must be deemed a confession of the material allegations of Weller's complaint and this precludes granting of summary judgment;

2. That the trial court erred in holding its notice of claim of lien invalid;

3. That material issues of fact were raised as to Aetna's liability which precluded granting of summary judgment;

4. That the trial court erred in including Rule 54(b) language in its judgment, when this was not requested in the motion for summary judgment itself;

5. That the trial court erred in failing to grant plaintiff relief as to the defaulted defendants; and

6. That the trial court erred in denying its discovery related motions.

We will first dispose of those issues raised by Weller which are not pertinent to the issues of the validity of its notice and claim of lien and the liability of Aetna.

Weller first contends that the failure of some of the answering defendants to verify their answers precluded the granting of summary judgment. This contention is raised for the first time on appeal.

Rule 11(c), Arizona Rules of Civil Procedure, provides in part that when equitable relief is requested in a complaint under oath,

> the responsive pleading of the opposite party shall be under oath . . . and each material allegation not denied under oath shall be taken as confessed.

This rule does not have its counterpart in the Federal Rules of Civil Procedure, but was derived from § 21–412, A.C.A., 1939.

This statutory provision was interpreted in two cases. *Colboch v. Aviation Credit Corp.*, 64 Ariz. 88, 166 P.2d 584 (1949) and *Hall v. Hall*, 32 Ariz. 395, 259 P. 402 (1927). Both of these cases indicate that the proper method of attacking a non-verified responsive pleading in an equity matter is by proper motion in the trial court. Moreover, as stated in *Hall v. Hall, supra* :

> And if parties proceed with a hearing on the merits without such motion, the verification is deemed waived.

32 Ariz. at 398, 259 P. at 403.

■ We hold this statutory interpretation is equally applicable to present Rule 11(c), Arizona Rules of Civil Procedure. As Weller failed to raise the lack of a verification in the trial court, the verification must be deemed to have been waived in that forum and likewise is waived on appeal.

■ Weller also raises the issue that the trial court was without authority to include the finality language of Rule 54(b), Arizona Rules of Civil Procedure, in its written judgment absent a request therefor in the motions for summary judgment themselves. Weller cites no authority in support of this contention. The pertinent portions of Rule 54(b) provide:

> [T]he court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Nowhere does this rule require, as a prerequisite to the court exercising its discretion under this rule, that a pleading to that effect must be presented to it. Moreover, here, the form of judgment presented to the trial court by the prevailing defendants contained the pertinent language of Rule 54(b). Weller admits that it was granted an opportunity to object to the form of that judgment, at which time presumably its position as to the Rule 54(b) language could have been expressed.

Weller's contention, based upon a lack of authority for the trial court to act in this manner, is completely without merit.

Weller next argues that the trial court erred in failing to allow it to foreclose its lien as to the non-appearing defendants. This argument overlooks the pertinent language of Rule 55(b)(2), Arizona Rules of Civil Procedure, which provides:

> Judgment by default may be entered as follows:
>
> *   *   *   *   *   *
>
> (2) *By hearing.* In all other cases [other than money judgments] the party entitled to a judgment shall apply to the court therefor  .  .  . .

■ Obviously, Rule 55(b)(2) contemplates that before a plaintiff is entitled to a judgment against a defendant, some showing of entitlement to that relief must be presented. Here Weller was either entitled to foreclose its lien or it was not. The trial court having found Weller was not entitled to this relief properly denied judgment against the defaulting defendants, as Weller at that point had failed to prove a claim against them.

■ The final "collateral" contention of Weller is that the trial court erred in denying its motion to compel directed to various discovery undertaken by Weller. As previously indicated, this discovery, in major part, is pertinent to issues still pending in the trial court. However, at this point, this court lacks appellate jurisdiction to review this issue. Weller has attempted to vest jurisdiction in this court on this issue by a notice of appeal from the order denying its motion to compel. The denial or granting of a motion in connection with discovery procedures is not an appealable order. *Hine v. Superior Court*, 18 Ariz.App. 568, 504 P.2d 509 (1972); *see Cornet Stores v. Superior Court*, 108 Ariz. 84, 492 P.2d 1191 (1972). Moreover, merely because under A.R.S. § 12–2102, this court might, in an appeal of a final judgment disposing of those issues to which these discovery orders were pertinent, have jurisdiction to consider their effect, does not mean we have jurisdiction to do so at this point. A.R.S. § 12–2102 provides in part:

A. Upon an appeal from a final judgment, the supreme court shall review any intermediate orders involving the merits of the action *and necessarily affecting the judgment* . . . .

(Emphasis added.)

■ At this time these discovery orders do not "*necessarily affect*" the judgments sought to be reviewed here. As such, we decline to reach the merits of their validity.

This then brings us to the main issue in this appeal—the validity of Weller's notice of claim of lien and the trial court's summary disposition of this issue. It was the defendants' position that the notice and claim of lien was invalid because it did not comply with the applicable statutory provisions and, in any event, it was filed untimely.

Weller relying upon the "single project" theory espoused in *Wahl v. Southwest Savings and Loan Ass'n*, 12 Ariz.App. 90, 467 P.2d 930, *modified in part*, 106 Ariz. 381, 476 P.2d 836 (1970), contends that its notice and claim of lien is valid and that a factual issue was presented as to the timeliness of its lien notice.

We turn to the argument attacking the validity of the notice and claim of lien. It is basically the defendant's contention that the failure of the notice and claim of lien to specify the amount claimed against each individual lot destroys the efficacy of the lien.

The right to create a mechanic's lien on city lots is provided for by A.R.S. § 33-983(A) which in pertinent part provides:

A. A person who furnishes material or labors upon a lot in an incorporated city or town . . . shall have a lien on the lot . . . and the building, structures, and improvements thereon *for material furnished and labor performed.*

(Emphasis added.)

A.R.S. § 33-991 designates what lands the lien created by § 33-983 extends to when city lots are involved:

B. If the land on which an improvement is made or labor has been performed lies within the limits of a recorded map or plat of a townsite, an incorporated city or town, or a subdivision, the lien shall extend to and include *only the particular lot or lots upon which the improvement is made and the labor has been performed.*

(Emphasis added.)

A.R.S. § 33-993 provides the method by which the lien is perfected and requires, among other things that the notice and claim of lien "shall contain":

1. The legal description of the lands and improvements to be charged with a lien.

\* \* \* \* \* \*

4. A statement of the lienor's demand, after deducting just credits and offsets.

The defendants argue that this statutory scheme mandates that a notice and claim of lien which attempts to impress a lien on more than one lot without specifying the amount of labor or materials actually expended on each individual lot is invalid. The defendants' theory is in harmony with the underlying theory of mechanic's liens. As stated in the supreme court's opinion in *Wahl v. Southwest Savings and Loan Ass'n*, 106 Ariz. 381, 476 P.2d 836 (1970), quoting with approval *Blake v. Crystaline Lime Co.*, 37 Idaho 637, 221 P. 1100 (1923) *modified on rehearing*, 37 Idaho 643, 221 P. 1101 (1924):

"The very foundation of a lien claim under our statute is the performance of labor upon or the furnishing of materials for the construction or improvement of the property upon which the lien is claimed. The theory upon which a lien is given as a prior claim upon the property is that the party claiming the lien has, either by his labor or by the materials furnished, contributed to the construction or improvement of the property upon which the lien is claimed."

106 Ariz. at 385, 476 P.2d at 840.

The supreme court in *Wahl* went on to point out:

Any other theory in regard to establishing the amount of materialmens lien would lead to untold difficulties . . . It departs from the equitable principle of

giving a man a lien for the *actual* labor or materials which he places into a building thereby enhancing the value of another's property.

(Emphasis in original.) 106 Ariz. at 385–86, 476 P.2d at 840–41.

Weller contends that these principles should not apply here because this was a "single project" and in any event, the issue of the amount of labor and material expended upon each particular lot goes to the proof necessary to foreclose its lien and not to its validity in the first instance.

Weller's "single project" theory is based upon the court of appeal's decision in *Wahl v. Southwest Savings and Loan Ass'n, supra.* We do not need to determine here whether the "single project" theory espoused by the court of appeals survived the supreme court's opinion in *Wahl,* or, whether under certain circumstances a blanket lien affecting more than one lot is valid. *See Hendrickson v. Bertelson,* 1 Cal.2d 430, 35 P.2d 318 (1934).

Here, the contract entered into between Weller and Homes did not constitute a single project in the sense that only one parcel of land was involved (here there are 48 lots subdivided by a recorded plat), or that the improvements were exactly alike on all the lots improved. Rather, the contract by its terms specified that as to the residences, there were four different classes designated in the contract as units A, B, C and A2. More importantly, the contract covered improvements on other parcels upon which work was performed, but which were not included within the notice and claim of lien. Thus, the notice and claim of lien itself not only treated these other improved parcels (recreation buildings, common areas, and lot 48) differently than the liened 47 lots, thus destroying any single project theory, but the lien attempted to encumber 47 lots for work upon these other parcels. As stated in *United Masonry, Inc. v. Jefferson Mews, Inc.,* 218 Va. 360, 237 S.E.2d 171 (1977):

> [T]he object of the law is to give those who, by their labor and material, have enhanced the value of the building the security of the lien thereon to the extent that they have added to its value, but not to give a lien therefor upon property not benefited by such labor and materials.

237 S.E.2d at 182.

■ The notice and claim of lien here when read in connection with the contract upon which it was based attempted to impose a lien upon property not benefited by Weller's efforts and, therefore, Weller's "single project" theory under these circumstances is simply not viable.

Weller argues, however, that apportionment of its blanket lien can occur at the trial of foreclosure and is a question of proof, rather than a question of validity of the lien itself. In making this argument, Weller relies upon the supreme court's decision in *Wahl,* which remanded to the trial court the determination of the amount of labor and materials expended by the individual lien claimants on the individual improvements created by the liens. However, the initial validity of the notices and claims of liens (except as for timeliness) were not an issue in *Wahl.* Rather, what was at issue was the priority of liens and their amounts. Therefore *Wahl* is not authority for the proposition that a blanket lien which seeks to impose liability for work performed on other parcels is valid.

■ Given the underlying theory of lien equals benefit bestowed and the statutory requirements that the lien extend only to the property improved and that the lien must specifically describe that property and the amount claimed thereon, at least where the interests of third parties other than the contracting parties are involved, we hold that a notice and claim of lien which fails to apportion the amount due between the several properties benefited is defective and no rights accrue thereunder. *United Masonry, Inc. v. Jefferson Mews, Inc., supra.*

Since we hold the lien invalid on this basis, we need not reach the issue of the timeliness of the filing of the notice and claim of lien.

As to Aetna's liability upon its bond, it is undisputed that this bond did not become effective until June 30, 1973. It is also

undisputed that Aetna is liable only during the period covered by its bond. *See Security-Connecticut Co. v. Grand-Air Metal Products*, 3 Ariz.App. 67, 411 P.2d 826 (1966). In view of Weller's "100% complete" invoice, dated June 8, 1973, Weller attempted to raise an issue of fact as to Aetna's liability by an affidavit that stated that Weller had performed services for Homes "from October, 1972, to and including November 30, 1973," that Weller "has not been paid for the furnishing" of such services and that there is a "balance due" of $24,463.83.

In our opinion, this affidavit lacks the specificity required by Rule 56(e), Arizona Rules of Civil Procedure, which provides in part that "an adverse party . . . must set forth *specific facts* showing that there is a genuine issue for trial." (Emphasis added.)

▇ Here, apparently, Weller is attempting to hold Aetna liable for the entire $24,-463.83. Yet, there is nothing in the affidavit to show what amount, if any, Homes refused to pay after the effective date of Aetna's bond, June 30, 1973, or what amount of work was performed after that date. For all we know, Weller might have only expended $10 worth of work and materials after the effective date of the bond for which it was not paid and yet Weller is claiming liability against Aetna for over $24,000. Under these circumstances, Weller's affidavits (including an affidavit filed after the motion for summary judgment was granted, but which did not supply the missing information) were not sufficient to raise a genuine issue of fact and the trial court properly entered summary judgment against it.

Judgments affirmed.

CONTRERAS, P. J., and OGG, C. J., Division 1, concur.