761 P.2d 174

**NORTHWEST FEDERAL SAVINGS & LOAN, Plaintiff–Appellant,**

v.

**TIFFANY CONSTRUCTION COMPANY, Defendant–Appellee.**

**No. 1 CA–CIV 9403.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 8, 1988.

Sparks & Siler, P.C. by Kevin T. Tehan, Scottsdale, for plaintiff-appellant.

Cunningham, Tiffany & Hoffman by Dow Glenn Ostlund, Phoenix, for defendant-appellee.

## OPINION

GRANT, Judge.

This is a lien priority dispute between a contractor and a lender. We address the following three questions: (1) was the mechanic's lien of Tiffany Construction Company (Tiffany) invalid because Tiffany did not allocate its demand in its notice and claim of lien among the improved subdivision lots; (2) were the rights of Northwest Federal Savings & Loan (Northwest Feder-

al) under its deeds of trust subrogated to its rights under an earlier recorded deed of trust; and (3) did Northwest Federal and Tiffany settle the mechanic's lien claim prior to this litigation?

## BACKGROUND

On May 7, 1984, Tiffany began construction of off-site improvements for the eight-lot Mummy Mountain View subdivision. On May 11, 1984, American West Mortgage Services, Inc., Northwest Federal's predecessor in interest, recorded two deeds of trust on the subdivision. Tiffany later sued to foreclose its mechanic's lien and Northwest Federal sued to foreclose its deeds of trust. These suits were consolidated. M.L.S. Development, Inc., the owner of the subdivision, was in bankruptcy and Northwest Federal obtained an order from the bankruptcy court lifting the stay.

The trial court granted Tiffany's motion for summary judgment and denied Northwest Federal's cross-motion, finding that Tiffany's mechanic's lien had priority over Northwest Federal's deeds of trust.

## (1) VALIDITY OF TIFFANY'S LIEN

Northwest Federal argues that Tiffany's lien is invalid because the notice and claim of lien charged all eight lots with the lien and did not allocate its demand among the lots.

■ A lien for more than one lot or building is referred to as a blanket or joint lien. In considering the validity of a blanket lien, courts have had two general concerns. First considered is whether the state's mechanic's lien statutes prohibit blanket liens. *See generally* Annotation, *Mechanic's Lien for Work on or Material for Separate Buildings of One Owner,* 15 A.L.R.3d §§ 12, 13, 18 (1967). If the statutes do not, the next concern is the nature of the particular construction contract and whether it is limited to a single project.

### (1a) Arizona Mechanic's Lien Statutes

Before we consider whether Arizona mechanic's lien statutes prohibit the filing of a blanket lien, we address whether Tiffany

filed a blanket lien. Did Tiffany have one or eight liens on the subdivision? Tiffany had lien rights under A.R.S. § 33–983(A), which provides that a person who improves a street shall have a lien on "the lot or parcel" of contiguous land:

> A person who furnishes professional services or material or labors upon a lot in an incorporated city or town, or any parcel of land not exceeding one hundred sixty acres in the aggregate, or fills in or otherwise improves the lot or such parcel of land, or a street, alley or proposed street or alley, within, in front of or adjoining the lot or parcel of land at the instance of the owner of the lot or parcel of land, shall have a lien on the lot or parcel of contiguous land not exceeding one hundred sixty acres in the aggregate, and the buildings, structures and improvements on the lot for professional services or material furnished and labor performed.

A.R.S. § 33–983(A) (Supp.1987). In the context of a subdivision, lots or parcels are the plots of land into which the subdivision is divided. A.R.S. § 32–2101(32). Given the reference in A.R.S. § 33–983(A) to a "lot or parcel" in the singular, and assuming each of the eight lots of Mummy Mountain View was contiguous to Tiffany's improvements, we conclude that Tiffany had a total of eight liens—one lien on each of the subdivided lots.

Tiffany recorded its notice and claim of lien pursuant to A.R.S. § 33–993(A), which provides that the notice and claim of lien shall contain the legal description of the lands[1] and improvements to be charged with "a lien" and a statement of the lienor's demand.

Other state courts have inferred from statutory references in the singular to a lien on "a lot" or on "a building" that the statutes prohibit blanket liens. Annotation, *supra*, 15 A.L.R.3d at § 12. Thus, it could be argued that A.R.S. § 33–993(A) prohibits the filing of a blanket lien. However, we reject such a literal interpretation of this statute.[2] Instead, we consider whether Tiffany's compliance with A.R.S. § 33–993(A) was sufficient.

■ Substantial compliance with the mechanic's lien statutes is sufficient, if such compliance is not inconsistent with the legislative purpose of the statutes. *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986). The particular legislative purpose of A.R.S. § 33–993(A) is to give notice of mechanic's liens. *Commercial Cornice & Millwork, Inc. v. Camel Constr.Servs.Corp.*, 154 Ariz. 34, 37, 739 P.2d 1351, 1354 (App.1987). The general legislative purpose of the mechanic's lien statutes is to protect a laborer or materialman by giving him a lien for "the actual labor or materials which he places into a building thereby enhancing the value of another's property." *Wahl v. Southwest Sav. and Loan Ass'n*, 106 Ariz. 381, 386, 476 P.2d 836, 841 (1970) (emphasis deleted).

■ Arizona courts have held mechanic's liens invalid when the notice and claim of lien did not give adequate notice of the lien. *Smith Pipe & Steel Co. v. Mead*, 130 Ariz. 150, 151, 634 P.2d 962, 963 (1981). *See also Commercial Cornice & Millwork, Inc.*, 154 Ariz. at 37, 739 P.2d at 1354.

This court held a blanket lien invalid when the notice and claim of lien charged some but not all of the improved lots with the lien unduly burdening those liened lots. *Michael Weller, Inc. v. Aetna Cas. and Sur. Co.*, 126 Ariz. 323, 329, 614 P.2d 865, 871 (App.1980). In *Michael Weller*, this court held Weller's notice and claim of lien

---

1. The reference to "lands" in the plural may have · been intended to describe the lien for improvements to a structure on the "acres" or the "lot or lots" upon which an improvement is made. A.R.S. § 33–991 (Supp.1987) referring to A.R.S. § 33–981(A) (Supp.1987). *See* Townsdin, *The Mechanics' Lien in Arizona: Is It a Practical Remedy?*, 7 Ariz.L.Rev. 296, 303 (1966) (A.R.S. § 33–991 supplements A.R.S. § 33–981).

2. We note and distinguish the decision by Division 2 of the Arizona Court of Appeals in *Adams Tree Serv., Inc. v. Transamerica Title Ins. Co.*, 20 Ariz.App. 214, 511 P.2d 658 (1973). Based on the reference in the singular in A.R.S. § 33–983(A) to "lot or parcel," it concluded that only the parcel improved could be liened. *Id.* at 218, 511 P.2d at 662. However, the issue in *Adams Tree Serv.* was whether a subcontractor could lien lots which were not improved.

was invalid because it attempted to impose a lien for all work under the subcontract on less than all the parcels on which work was done.[3]

We conclude that Tiffany's notice and claim of lien was consistent with the purposes of Arizona's mechanic's lien statutes. The notice and claim of lien did give notice of the lots charged with the lien.[4] It charged only the improved lots with the lien. It did not unduly burden any individual lot owner because M.L.S. Development, Inc. owned all the lots.

#### (1b) Single Project Theory

We therefore reach the question of whether Tiffany's contract was limited to a single project. In considering the validity of a blanket lien, courts consider whether the particular construction contract is limited to a single project. Courts are more likely to uphold a blanket lien if the labor or materials are supplied under a lump-sum contract and not allocated among buildings or lots, if the materials are delivered to a general construction site and not to individual buildings and lots, and if the buildings are intended for a common purpose and located upon contiguous lots. Annotation, *supra*, 15 A.L.R.3d at §§ 15–17. Cf. *Wahl v. Southwest Sav. & Loan Ass'n*, 12 Ariz.App. 90, 95, 467 P.2d 930, 935, *vacated in part*, 106 Ariz. 381, 476 P.2d 836 (1970). A blanket lien is appropriate when a laborer or materialman is unable to allocate his improvements among the particular buildings or lots. *Nat'l Permanent Fed. Sav. & Loan Ass'n v. Virginia Concrete Co. (In re Thomas A. Cary, Inc.)*, 412 F.Supp. 667, 673–74 (E.D.Va.1976), *aff'd mem.*, 562 F.2d 47 (4th Cir.1977). The nature of subdivision construction may necessitate blanket liens. *Id.*

The terms of Tiffany's contract with M.L.S. Development, Inc. were set forth in three proposals, but we conclude that Tiffany's improvements constituted one project. The three proposals were all directed to the same offsite improvements. Tiffany was paid based on the quantity of materials supplied to the whole project, not to a particular lot. Tiffany might be unable, for example, to allocate its two street signs and three fire hydrants among the eight lots.

Northwest Federal argues that we should interpret our decision in *Michael Weller* to require that a notice and claim of lien which charges more than one lot with the lien must allocate the lienor's demand among the lots. Michael Weller, Inc. agreed to provide drywall and painting work for a subdivision construction project. The subcontract divided the forty-eight houses in the subdivision into four classes and allocated the amount to be paid among the four classes, the recreation building, and the common area improvements. Michael Weller, Inc. recorded a notice and claim of lien in the amount of $24,463.83 against forty-seven lots, but not against the forty-eighth lot, the recreation building, or the common area. The notice and claim of lien did not allocate the lienor's demand among the lots. *Michael Weller*, 126 Ariz. at 326, 614 P.2d at 868. In *Michael Weller* this court listed three factors in concluding that the single project theory was inapplicable: more than one lot was improved, the improvements among the lots were not equal, and not all the property improved was liened.

We distinguish *Michael Weller* based on the absence of the third factor: Tiffany improved all eight lots and only liened those eight lots. Furthermore, the proposals of Tiffany did not allocate the value of

---

3. We note that in another case, this court held that a lien was valid, when the notice and claim of lien charged numerous lots with the lien. *James Weller, Inc. v. Hansen*, 21 Ariz.App. 217, 221, 517 P.2d 1110, 1114 (1973). However, the court did not address whether, in its notice and claim of lien, James Weller, Inc. allocated its demand among the lots.

4. Northwest Federal does not argue that Tiffany's improvements were asymmetric among the lots. A blanket lien among asymmetrically improved lots would arguably not give notice of the demand per lot. In that situation, the owner's ability to protect itself by requiring lien waivers or payment bonds would have to be balanced against the lienor's ability to allocate his demand among lots.

the offsite improvements among the lots. In contrast, the subcontract of Michael Weller, Inc. did allocate the value of the drywall and painting work among the lots. We do not interpret *Michael Weller* to invalidate all blanket liens. In interpreting *Michael Weller* we note its reliance on the Virginia Supreme Court's decision in *United Masonry, Inc. v. Jefferson Mews, Inc.,* 218 Va. 360, 237 S.E.2d 171 (1977). The decision in *United Masonry* does not invalidate all blanket liens; it invalidates blanket liens for improvements based on separate contracts covering different property. A situation more similar to Tiffany's under the Virginia mechanic's lien statutes is *National Permanent Fed. Sav. & Loan Ass'n;* Riley Building Supply, Inc. delivered materials to the fifty lots in the Treeside subdivision. 412 F.Supp. at 671. Its lien was filed against all fifty lots, without allocating the value of its improvements among the lots. The court noted that Riley delivered materials to a general site, not to specific lots, and that Riley sent some materials to the general contractor's mill for prefabricating. *Id.* at 673. Riley's materials were shipped by quantity, not by lot, and Riley maintained a single open account for its materials.

The court found that "[i]t is not feasible for Riley to be responsible and accountable for materials that were delivered on a request basis." *Id.* [5] The court weighed the lender's ability to protect itself against the laborer's or materialman's ability to protect itself:

The policy considerations of which party is better equipped to protect itself and with whom equity rests must be addressed. National Permanent and Lawyers Title urge that the burden is upon the materialmen and suppliers to substantiate their claims on a lot by lot basis

because they were better able to undertake such a task. The Court is not persuaded by this argument. National Permanent as lender may require the filing of lien waivers of all labor and materialmen as a condition of releasing increments of the construction loan. The lender may employ a variety of other means to protect itself. The Court does not believe that it should intercede because the lender did not avail itself of these protective measures. The essence of the mechanic's liens laws is to protect materialmen when they have provided supplies and have not been compensated. In enacting the mechanic's liens statute, the Commonwealth of Virginia has enunciated its policy consideration that materialmen and supplies should be paid or have the recourse of lodging a lien against the property. The Court does not believe that this policy should be vitiated when a subdivision and joint liens are involved. The nature of the development of a subdivision provides impediments to the use of a single lien. The practice of supplying materials in bulk and not to a specific lot or building ... could have been restricted by National Permanent.

*Id.* at 674.

### (2) SUBROGATION TO EARLIER DEED OF TRUST

In general, a mechanic's lien has priority over all liens attaching after work begins. A.R.S. § 33–992(A) (Supp.1987). Tiffany began work on the subdivision on May 7, 1984 and Northwest Federal's deeds of trust were recorded on May 11, 1984. Thus, Tiffany's mechanic's lien apparently had priority over Northwest Federal's deeds of trust. However, Northwest Federal argues that its rights under its May

---

**5.** We note that the court in *National Permanent Fed. Sav. & Loan Ass'n* also stated that a partial release of a blanket lien would be fatal to its validity, because a partial release would "belie this inability to allocate." 412 F.Supp. at 673–74. Tiffany did agree to a partial release of its lien for each of the eight lots upon payment of one-eighth of the total charge. Northwest does not argue that this agreement invalidates its lien. Permitting partial releases only at the risk

of invalidating the remaining lien might unduly restrict the manner in which, and whether, laborers and materialmen are paid. *Cf. PIC Constr. Co. v. First Union Nat'l Bank of North Carolina,* 218 Va. 915, 922, 241 S.E.2d 804, 808 (1978) (if there are no third persons whose interest would be injuriously affected by the release, such a procedure would not invalidate the lien as to unreleased lots).

11, 1984 deeds of trust were subrogated to its rights under a deed of trust recorded February 14, 1984, based on *Peterman–Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank*, 2 Ariz.App. 321, 408 P.2d 841 (1965).

In *Peterman–Donnelly*, the Apache Junction Chamber of Commerce borrowed $10,000 from L.D. Eyre, secured by a mortgage to Eyre, for the purchase of land for a baseball park. *Id.* at 322, 408 P.2d at 842. The Chamber of Commerce gave the land to The Lost Dutchman Baseball Association. The Baseball Association borrowed $35,000 from First National Bank of Arizona and used $11,600 of the loan proceeds to repay Eyre. Before the Bank's loan was recorded, Peterman–Donnelly Engineers & Contractors Corp. began work on the baseball park. *Id.* Division 2 of this court found that the parties intended that part of the loan proceeds would be paid to Eyre. The court held that the Bank's claim was subrogated to Eyre's claim and that $11,600 of the loan had priority over the mechanic's lien. *Id.* at 326, 408 P.2d at 846.

In its complaint to foreclose on the May 11, 1984 deed of trust, Northwest Federal did not even mention the February 14, 1984 deed of trust. Northwest Federal first raised the subrogation issue one day before the oral argument on the cross-motions for summary judgment. It submitted no affidavits that anyone intended that the proceeds paid under the May 11, 1984 deeds of trust, in the amounts of $270,000 and $776,250, would be used to satisfy the $746,250 debt underlying the February 14, 1984 deed of trust, or that the proceeds were so used. There was no court reporter present at oral argument on the cross-motions. We conclude that Northwest Federal failed to timely raise a question of fact concerning subrogation.

### (3) SETTLEMENT

■ The proposed settlement was that Tiffany would release its mechanic's lien in exchange for a promissory note for $37,788.53 secured by a deed of trust in the same priority position as its mechanic's lien. This meant that the deed of trust had to be free of all liens except Northwest Federal's February 14, 1984 deed of trust. Northwest Federal did not dispute the terms of the proposed settlement in the trial court. On appeal, Northwest Federal asserts that the proposed settlement was to be final upon recordation of the deed of trust. However, it submitted no evidence to the trial court supporting this assertion.

Pursuant to the proposed settlement, Tiffany received a promissory note for $37,788.53 secured by a deed of trust. However, the deed of trust was not in the same priority position as Tiffany's mechanic's lien. The title exceptions applicable to this deed of trust included Northwest Federal's May 11, 1984 deeds of trust as well as two profit-sharing agreements.[6] Tiffany returned the promissory note, released the deed of trust and filed suit to foreclose its mechanic's lien.

We conclude that Tiffany did not surrender its claim through settlement because the deed of trust received in exchange for the mechanic's lien was not in the same priority position as the mechanic's lien. The judgment of the trial court is affirmed.

### CONCLUSION

We grant Tiffany's request for attorneys' fees pursuant to A.R.S. § 12–341.01(A). The amount may be established by Tiffany under Rule 21(c), Arizona Rules of Civil Appellate Procedure.

AFFIRMED.

FROEB, P.J., and CONTRERAS, J., concur.

---

**6.** In addition, the title exceptions applicable to this deed of trust included a lis pendens in *Thomas v. M.L.S. Development, Inc.*, No. C–526979. However, M.L.S. Development, Inc. assured Tiffany that the title insurer had agreed to insure over the lis pendens.